**STUMBO et al. v. UNITED STATES.**
No. 7234.

Circuit Court of Appeals, Sixth Circuit.
June 1, 1937.

Sawyer A. Smith, of Covington, Ky., and George B. Martin, of Catlettsburg, Ky. (A. J. May, C. B. Wheeler, Allen & Tackett, and Howard & Mayo, all of Prestonsburg, Ky., on the brief), for appellants.

Mac Swinford, of Lexington, Ky. (Claude P. Stephens, of Prestonsburg, Ky., on the brief), for the United States.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellants complain of a conviction on the first count of a twenty-one count indictment, which, as construed by the court, charged them with having conspired to commit an offense against the United States in the use of the United States mails in furtherance of a scheme to defraud, as defined by section 338, 18 U.S.C.A. The trial lasted nineteen days, the evidence consumes over 3,000 pages of transcript, and the assignments of error cover 111 printed pages of a 1,453-page record. Errors are assigned to the sufficiency of the indictment, the failure of the court to require an election of counts upon which prosecution should proceed, refusal of severance as between classes of defendants, denial of a motion for more specific bill of particulars, admission of incompetent and exclusion of competent evidence, failure to give requested instructions, and errors in instructions given, and failure to direct a verdict for the defendants.

The prosecution was based upon the activities of certain members of a relief committee set up by the Kentucky Relief Commission to distribute funds appropriated out of the Treasury of the United States for the care of destitute persons in Floyd county, Ky., upon the activities of certain employees and agents of the committee, and those of merchants upon whom orders were drawn. A proper appraisal of the sufficiency of the indictment, and contentions as to the fairness of the trial, requires consideration of the setting in which the alleged conspiracy was conceived and the acts in furtherance of its object committed.

Under regulations adopted by the Relief Commission, the Floyd County Committee was required to ascertain the persons in need of relief and to provide them with orders upon local merchants for food and clothing. They were then to receive merchants' supply orders on form 6. These could be taken to designated grocers or clothiers, who would furnish the supplies therein specified. The merchant was required to witness the signature of the beneficiary to a receipt for goods supplied, and to certify upon the order that he had delivered them. The merchant would then list on form 7 the supply orders filled and certify that he had properly filled them. Upon mailing form 7 to the Relief Commission at Louisville he would receive a check for the value of the supplies furnished. He was permitted, however, to assign supply orders to wholesalers in payment of merchandise by means of form 7 A.

The appellant Stumbo, county judge of Floyd county, and appellant Carter, mayor of the city of Prestonsburg, were members of the county committee, the latter one of its disbursing officers. Appellants Woods and Otto Fannin were also members of the committee, appellants Nicholls, Salisbury, Sandidge, George, and Hatcher were its employees, and appellants May, Preston, G. R. Fannin, Mayo, Boyd, Hatfield, and Cyphers were merchants in Prestonsburg and other places in the county. It was the theory of the Government that Stumbo and Carter, who were men of great political influence, dominated the committee, had increased it from six to nine members, and filled it with their political and personal friends; that Powers, the original disbursing officer, having refused to enter into any unlawful scheme, was by them removed, and Carter and Nicholls substituted; that after the formation of the conspiracy they had caused large numbers of relief orders to be issued and delivered directly to the merchant conspirators, who made false certificates thereon, mailed them to the Relief Commission, and received checks in return for the amounts therein indicated. During the existence of the conspiracy, from March or April, 1933, until September, 1934, there was sent into Floyd county $381,312.-66—sufficient to adequately provide for all destitute persons of the county, but it was discovered that hundreds of relief orders never reached the beneficiaries to whom they were issued, and that the purported receipts for merchandise were not

by them signed. Numerous orders were received from merchants by the Commission which showed no evidence of having been handled, and bore numbers in sequence. It was thought by the government investigators, therefore, from this and other evidence brought out at the trial, that the alleged fraud could have been perpetrated by the merchants only with the knowledge and acquiescence of the disbursing officers and members and employees of the committee all acting in concert, and so a presentment was made to the grand jury.

The indictment resulting in an extraordinary and unusual opus. Each of its first twenty counts sets up an alleged scheme to defraud devised by the appellants and others for the purpose of defrauding the State of Kentucky, the United States, the state and federal relief agencies, and others; that the purpose of the scheme was to steal, purloin, embezzle, misapply, and convert to the use of the appellants and others funds appropriated for relieving the necessities of the destitute people of Floyd county. It describes the scheme, however, not only as one devised or in contemplation, but also as one executed, reciting a succession of acts by which it was brought to fruition. Each count then includes an allegation that the defendants caused to be placed in the United States mails a letter in a sealed envelope addressed to the Administrator of the Kentucky Relief Commission at Louisville, with postage prepaid, and containing forged and fictitious relief orders. Each of the first twenty counts, however, describes the scheme variously as "a scheme, conspiracy and device to defraud," or as "a conspiracy, scheme and artifice to defraud." Following the twentieth count is a section of the indictment headed "Overt Acts." Here, in independently numbered paragraphs, are recited thirty-five separate and distinct acts, each committed by one or more of the defendants, but not including the acts of mailing the twenty several letters recited in the preceding counts. Then follows count 21, which charges a conspiracy in the words of the statute, and which incorporates by reference as acts done in its furtherance the thirty-five overt acts previously recited.

■ That the indictment is inartificially drawn, badly organized, and unskilled, need not be further demonstrated. It is not, however, for such reasons alone, in the light of modern thought and statutory enactment, to be stricken down as failing to state an offense or to sustain a conviction. That the difficulties which confronted the pleader were self-imposed is plain to see. Conceiving the mailing of each letter which contained forged supply orders to be a distinct substantive offense under the mail fraud statute, as undoubtedly it is, Badders v. United States, 240 U.S. 391, 394, 36 S.Ct. 367, 60 L.Ed. 706, and conceiving each substantive offense also to be the object of a distinct conspiracy, to be separately charged and punished, he endeavored to allege twenty several conspiracies. He was dealing, however, with a substantive offense which had as one of its elements the devising of a scheme to defraud, and this when shared among several is itself a conspiracy. Van Riper v. United States, 13 F.(2d) 961, 964 (C.C.A. 2). The devising of a scheme to defraud, however, does not become an offense until there has been use of the mails in its furtherance, and so the pleader, believing that he was required to plead as the object of each conspiracy an effectuated offense against the United States rather than one in contemplation, included in each count a charge of actual use of the mails. But since the conspiracy itself is actionable only when some overt act is done in its furtherance, and since the mailing was already utilized to complete his substantive offenses, the pleader added to his indictment the section reciting overt acts to complete his several conspiracy allegations. Then, undoubtedly in the fear that the evidence might disclose not twenty distinct conspiracies but one conspiracy with twenty several objects, he added, to be on the safe side, still another count charging a general conspiracy. It is not an unusual expedient.

■ The question we have to decide is not whether the present indictment is a model pleading, or whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, so that the judgment may be a bar to further proceedings against him for the same offense. Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606; Bettman v. United States, 224 F. 819, 826 (C.C.A.6). In this connection it has been noted that

832

"the rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded," Hagner v. United States, 285 U. S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, and that "upon a proceeding after verdict at least, no prejudice being shown, it is enough that the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment." Dealy v. United States, 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545; Lew Moy v. United States, 237 F. 50 (C.C.A.8). What was said in the Hagner Case is reminiscent of the observation of the late Mr. Justice Holmes in an earlier decision: "If this case raised a question of pleading I should go far in agreeing to disregard technicalities that were deemed vital a hundred or perhaps even fifty years ago." United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 305, 66 L.Ed. 619. Even if it be thought that Judge Hand's commentary upon the indictment against our criminal procedure, that "It is based upon the sophistries which have pervaded it," and that "reversals for formal errors are a crying scandal, which has brought the whole system into disrepute" (Van Riper v. United States, supra), marks the extreme view, the present-day concept of the sufficiency of an indictment and the fairness of a criminal trial is now crystallized into a statute, and ancient precedents are of little aid to courts in assaying either.

Section 1025, Revised Statutes, U.S.C., T. 18, § 556 (18 U.S.C.A. § 556), provides: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

■■■■ This section was enacted to the end that while the accused must be afforded full protection, the guilty shall not escape through mere imperfections of pleading, and while it was not its intent to dispense with the rule which requires that the essential elements of an offense must be alleged, it authorizes courts to disregard merely loose or inartificial forms of averment. Hagner v. United States, supra. We are not persuaded that the defects of the present indictment are fatal, or

that the court should have sustained a demurrer, or directed a verdict for the defendants on the ground that it did not state an offense. Nor do the proceedings at the trial indicate that the defendants were either surprised or prejudiced thereby. The defense was full and complete, it was understood throughout that a conspiracy was charged, and whether so denominated or merely as a scheme, the common design, the concert of action, the unlawful purpose, and the mechanics of execution therein fully appear. There may be no reasonable complaint that the offense was not stated in the language of the statute, when such was the necessary portent of the language used. Matchok v. United States, 60 F.(2d) 266 (C.C.A.3).

■■■■ Neither do we think there was any fatal defect in the indictment in its failure to set out the tenor of the letters alleged to have been mailed in the furtherance of the scheme to defraud. The contents of the letters did not touch the pith of the crime itself, as would have been the case if it were one of forgery or counterfeiting. The letters might have been wholly innocuous in themselves and yet have completed either the substantive crime or the conspiracy. Pooler v. United States, 127 F. 509 (C.C.A.1); United States v. Herzig, 26 F.(2d) 487 (D.C.S.D.N.Y.); Durland v. United States, 161 U.S. 306, 16 S. Ct. 508, 40 L.Ed. 709.

■■■■ Joinder of several counts in a single indictment is authorized by section 557, 18 U.S.C.A. Each count here relied upon a different and separate use of the mails, but all were in furtherance of an identical or similar scheme to defraud, or the same or a similar conspiracy devised or engaged in by all of the defendants. Badders v. United States, supra. Nor was there error in overruling the motion for severance. This rested in the sound discretion of the court. Once the conspiracy and the connection therewith of the several parties is proved, even though their activities varied, those of each according to his status, yet all are united in the furtherance of a common purpose, and there is no abuse of discretion in trying them together. Likewise within the discretion of the court was the motion for a more specific bill of particulars. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545. The original bill went into considerable detail. The motion for amplification requested information con-

cerning the minutest items of evidence. We know of no invasion of the rights of defendants in the failure of the court to require that the Government lay before them its entire case.

It would be impossible to discuss all of the assignments of error to the admission or exclusion of evidence. They are for the most part highly technical, for no refinement of grievance has been overlooked in challenging the rulings of the trial judge. The extravagant and unnecessary multiplication of exceptions and assignments of error that has been so often condemned, Badders v. United States, supra; Central Vermont Railway Co. v. White, 238 U.S. 507, 509, 35 S.Ct. 865, 59 L.Ed. 1433,[1] is indulged in in its most confusing form. We have given patient study to the record, realizing that where everything is emphasized it often results that there is no emphasis, and that substantial error might be overlooked in the unnecessary massing of insubstantial complaints. It is sufficient to say, however, after such consideration, there there was ample evidence to submit to the jury the issue of the defendants' guilt, and no prejudicial error in the admission or exclusion of evidence. The fact issues were fairly submitted to the jury, which was fully instructed upon the law without substantial error.

The judgments are affirmed.