## MARSHALL v. UNITED STATES.

### No. 10298.

Circuit Court of Appeals, Ninth Circuit.

Dec. 30, 1944.

John J. Irwin, of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., and James M. Carter and Charles H. Veale, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Marshall was indicted, tried, convicted, and sentenced under nine counts of an indictment charging fraudulent use of the United States mails (18 U.S.C.A. § 338) and conspiracy to use the United States mails in furtherance of fraudulent practices (18 U.S.C.A. § 88). He appeals.

The indictment contains eleven counts, of which counts 6 and 7 were dismissed during the course of the trial. It charges appellant and four others with devising a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, statements, and promises. The scheme is set forth in detail in count 1 and is incorporated by reference in all the other counts. Thereafter, the first ten counts allege that defendants "unlawfully, wilfully and feloniously did knowingly place" in the mails "for the purpose of executing said scheme and artifice to defraud" various letters addressed to certain persons to be sent and delivered by the post office establishment of the United States. Count 11 alleges that the defendants conspired to devise the scheme to defraud set forth in the first count and to place letters and other mail matter in the Post Office of the United States in furtherance of that scheme. Thirteen overt acts for the purpose of carrying out the conspiracy are then listed.

Trial of the cause was had, and the jury found appellant Marshall guilty as charged in counts 1, 2, 3, 4, 5, 8, 9, 10, and 11 of the indictment. Appellant was sentenced to imprisonment for three years on each of counts 1 and 2 and for two years on count 11, the sentences on the three counts to run concurrently for a total of three years. The imposition of sentence on counts 3, 4, 5, 8, 9, and 10 was suspended for five years, commencing at the expiration of the sentences on counts 1, 2, and 11, and appellant was placed on probation for the five-year period. The within appeal was taken on the ground that the evidence was insufficient to support the charge and therefore that the trial court erred in failing to grant appellant's motions for a directed verdict at the close of the government's case and at the conclusion of all the evidence.

Appellant was one of the organizers of Direct-U-Systems, a corporation which was created in 1938 to produce and lease electrical directories for hotel lobbies and in which appellant and his codefendants were interested. The same year of 1938 appellant had transferred to one Ralph Young his interest in National Directory Systems. The latter corporation was similar in purpose and in method to Direct-U-Systems; it became inactive shortly after the transfer.

The business plan of Direct-U-Systems is detailed in the evidence. The company advertised in local newspapers throughout the country by notices of which the following is typical: "Resident manager, permanent connection, income reasonably $10,000 yearly. $3,750 cash required secured and returnable." Replies to the advertisements were acknowledged by letters explaining that representatives of the company would call personally to discuss the nature of its business. Subsequently, by oral and written statements the details of the proposition were revealed. Franchises were to be given for the distribution of the company's electrical advertising directories in defined territories. The directories, designed for hotel lobbies, consisted of wooden cabinets holding a map of the city in which the particular hotel was situated. A light showed the location of the hotel on the map. Spaces for local advertising were provided with an adjacent button that turned on a light indicating the location of the advertiser on the map. A larger space was intended for the display of advertising cards which were to be rotated constantly by an electrical device. Directories were to be leased to franchise holders, who were to sell advertising space thereon.

Written agreements between the franchise holders and the company were proposed. They gave the former the exclusive right to use and operate the latter's directories in described territories for a period of three years with options to renew. They provided for the payment of certain sums as advance annual rentals on a specified number of cabinets, for a lower annual rental after the first year on cabinets already installed, and for the payment to the company of a percentage royalty (differing in the various contracts) on amounts collected from advertisers. They contained the promise of the company to furnish and maintain directories ordered by franchise holders and to assist the latter in securing hotel leases and in hiring and training salesmen.

620

The company represented to prospective franchise holders that it desired to select for the work persons interested in a permanent connection that had an annually increasing income, that it virtually guaranteed those selected, that large earnings would result to franchise holders, that it was the exclusive manufacturer of electrical advertising directories for use in hotel lobbies and that the franchise holders would encounter no competition from similar products, and that successful directories were already installed in the lobbies of two leading hotels.

The indictment charges and the evidence shows that six men signed franchise-holder agreements with the company and paid to it sums ranging from $1500 to $3750 as advance rentals for directories. The letters set forth in the indictment were in each case mailed after the advances were received by the company. None of the franchise holders ever paid any money as royalties, and none ever made any profit. When three of the franchise holders complained and demanded the return of their money, "re-purchase agreements" which proved valueless were offered and in one instance an additional small payment was made. There was competition in the field from other similar products. The directories installed in the two leading hotels had been removed after a short trial period because unsatisfactory. None of the directories furnished franchise holders by the company operated properly, the commonest difficulty being the card-rotating device which was generally out of order.

When appellant and other of the defendants were connected with National Directory Systems prior to the organization of Direct-U-Systems, a similar absence of profit on the part of franchise holders prevailed. None of the holders made a profit. Neither were the directories mechanically reliable.

■ The facts herein do not support appellant's contentions that, since the company did all it said it would do in its contracts with franchise holders, a lack of criminal intent is shown and that no evidence was adduced to prove the charge of a fraudulent scheme. Direct evidence is rarely available to prove a fraudulent scheme or fraudulent intent. From the very nature of the offense, it must be inferred from the facts and circumstances of the situation in question. Clarke v. United States, 9 Cir., 1942, 132 F.2d 538, 541;

Gates v. United States, 10 Cir., 1941, 122 F.2d 571, 575.

■ In the instant case appellant and his co-defendants had followed the same procedure of obtaining money from so-called franchise holders for leases of electrical directories in connection with the National Directory Systems as they pursued in connection with Direct-U-Systems. Therefore, they knew that the method had proved unprofitable, yet they represented, and illustrated their theory by convincing figures, that large earnings could be made by franchise holders. They also knew that no profits were being made by franchise holders in connection with their present venture. They claimed that their machines were in great demand and were a novel thing when they were definitely aware of the contrary fact. They stated that the market was free of competition when they realized that there were others in the same field. We think the evidence sufficient to support the jury's inference of a fraudulent scheme.

■ That the evidence indicates the company's performance of the acts required of it in the franchise-holder agreements does not negative the existence of criminal intent. In other words, the company's assistance in training a sales force and its efforts to repair faulty equipment do not necessarily overcome the inference of guilty intent on the part of appellant and his co-defendants that may arise from knowledge of falsity inherent in statements made.

[4] The prime essential element of the offense defined by 18 U.S.C.A. § 338 is the use of the mails for the purpose of executing or attempting to execute a fraudulent scheme. Appellant argues that the facts in the instant case show no use of the mails for such a purpose since in all but one instance the letters charged in the indictment were mailed to the franchise holders after the company had received the money paid by them as advance rentals, and that in the one exception the letter contained merely a natural exaggeration and puffing of the business which did not deceive the addressee.

■ There is no question that the use of the mails after a scheme to defraud has been completed is not a use for the purpose of executing the scheme and therefore that in such a case there can be no offense under 18 U.S.C.A. § 338. Mitchell v. Unit-

ed States, 10 Cir., 1941, 118 F.2d 653, 655; Merrill v. United States, 9 Cir., 1938, 95 F.2d 669, 670; McNear v. United States, 10 Cir., 1932, 60 F.2d 861, 863. However, where the scheme charged in the indictment involves the continuing solicitation of public interest as well as a continuing relationship between schemer and victims and where letters are sent through the mails to further the relationship and to lull the victims into a sense of security and inaction, the mails clearly are used to accomplish the purpose of the scheme, and the essential ingredients of the mail fraud offense are present. Mitchell v. United States, 10 Cir., 1942, 126 F.2d 550, 554; Bogy v. United States, 6 Cir., 1938, 96 F.2d 734, 740; Brady v. United States, 9 Cir., 1928, 26 F.2d 400, 401; Preeman v. United States, 7 Cir., 1917, 244 F. 1, 9.

■ In the instant case the fraudulent scheme contemplated the signing of agreements during an indefinite period of time with various persons answering newspaper advertisements. In the specific instances alleged in the indictment the contracts provided for at least a three-year relationship between schemer and victims (with one exception where a short preliminary period preceded the three-year term), for an immediate payment as advance rentals for company directories, for subsequent annual rental payments, and for periodic payments of royalties on any amounts collected from advertisers on the directories. The letters set forth in counts 1, 2, 3, 4, 5, 8, 9, and 10 of the indictment were written between April of 1939 and November of 1940, in each case at a time when the contract of the addressee with the company was in full force and at a time when the company was acquiring more franchise holders. The letters optimistically discussed various aspects of the business and encouraged the recipient to cooperate with the company for their mutual benefit. In view of the continuing scheme and the term contracts, there can be no question but that substantial evidence supports the charge that the letters were mailed for the purpose of executing the fraudulent scheme. The fact that none but the initial payments were actually made by the victims does not affect the nature of the scheme. Newingham v. United States, 3 Cir., 1925, 4 F.2d 490.

We conclude that the trial court properly denied appellant's motions for a directed verdict.

■ Appellant reasons that there being insufficient evidence to support the charge of a fraudulent scheme, the evidence was insufficient to support the charge in count 11 of a conspiracy to commit that scheme. He concedes the existence of evidence to support one or more of the overt acts listed as effecting the object of the conspiracy. Appellant's argument falls in view of our decision with respect to the fraudulent scheme.

■ It is mentioned in passing in appellant's brief that a certain substantial part of the indictment is surplusage. Without considering whether the point is properly raised on appeal, we have studied the indictment and find appellant's contention without merit. Stumbo v. United States, 6 Cir., 1937, 90 F.2d 828; Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, 612; Butler v. United States, 8 Cir., 1927, 20 F.2d 570, 573.

Affirmed.