## BOBBROFF v. UNITED STATES.
### No. 13217.

United States Court of Appeals,
Ninth Circuit.

Feb. 25, 1953.

Louis V. Skinner, John S. Sinai and Ralph M. Tucker, Reno, Nev., for appellant.

Miles N. Pike, U. S. Atty., Reno, Nev. (Howard A. Judy, Reg. Atty., S. E. C., Arthur E. Pennekamp and F. E. Kennamer, Jr., San Francisco, Cal., of counsel), for appellee.

Before DENMAN, Chief Judge, and HEALY and ORR, Circuit Judges.

DENMAN, Chief Judge.

Appellant was found guilty of violation of Counts 3, 4, 5 and 8 of an indictment. He appeals from the sentence of imprisonment and fine on the conviction on each count. Counts 3, 4 and 5 charge the use of the mails in an offer to dispose of, to three shareholders in a Nevada corporation, Eversharp Launwhiz, Inc., further shares therein by employing a scheme to defraud in violation of the Securities Act of 1933, 15 U.S.C.A. § 77q(a) (1).[1]

Count 8 charged a similar use of the mails in an attempt to sell further shares to another shareholder of Eversharp Launwhiz, Inc. in violation of the mail fraud Statute, 18 U.S.C. § 1341.[2]

The use of the mails proved was the deposit in the United States mails in post offices in the State of Nevada of envelopes

---

[1]. Section 17(a) (1) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a) (1) makes it unlawful "for any person in the sale of any securities * * * by the use of the mails * * * to employ any device, scheme, or artifice to defraud". (Emphasis supplied). The term "sale" is defined by Section 2(3) of that Act, 15 U.S. C.A. § 77b(3) as including "every contract of sale or disposition of, **attempt or offer to dispose of** * * * a security

* * * for value". (Emphasis supplied).

[2]. This statute penalized "Whoever, having devised or intending to devise any scheme or artifice to defraud * * * for the purpose of executing such scheme or artifice **or attempting so to do, places in** any post office or authorized depository for mail matter, any matter or thing whatever * * *." (Emphasis supplied.)

addressed to four different shareholders of Eversharp Launwhiz, Inc., enclosing letters and printed matter of identical text. The four letters were composed under appellant's direction and contained enclosures directed by him and were mailed under his direction.

The letter urged the existing stockholders to purchase additional stock at $5 per share. Enclosed therewith was a multigraphed prospectus also composed by appellant relating to an offering of 80,000 shares of the common stock of Eversharp Launwhiz, Inc. and reprints from articles appearing in Reno. newspapers and a trade publication. These enclosures contained the statements charged in paragraph 5 of Count 1 of the Indictment (and incorporated by reference in all subsequent counts) to have .been false and misleading and made with the intent of misleading and deceiving the persons to be defrauded. Thus, the prospectus contains the statement

"The company (Eversharp Launwhiz, Inc.) is organized under the laws of the State of Nevada and has acquired the trade name of 'Eversharp Launwhiz' together with all 'Patents and Patents Pending formerly the property of Mr. James D. Bobbroff, the inventor."

This statement was palpably false in that the only interest acquired by Eversharp Launwhiz, Inc. in the patents was that acquired under the contract of August 17, 1948, between Eversharp Lawnmower Company and appellant and by him assigned to Eversharp Launwhiz, Inc. which granted only the right and license to manufacture the patented lawnmowers. By paragraph 9 of the agreement it was expressly made subject to cancellation by Eversharp Lawnmower Company in the event appellant failed to pay within 30 days of written demand of any sum of money becoming due to the company under the terms thereof, or should fail to correct within 30 days of written demand any violation of the agreement. The agreement contained an express condition that the licensee should produce one or more lawnmowers within two years, and the requirement that within five years he be manufacturing and selling lawn-

mowers in quantities consistent with demands for same and the facilities for the manufacture and sale thereof.

Thus, instead of owning the patent, as stated in the prospectus, Eversharp Launwhiz, Inc. had only a revocable license which might be lost through failure to comply with the terms of the basic agreement, which was well known by the appellant.

The reprints taken from issues of the Reno Evening Gazette, a Daily Publication, dated September 19, 1949, and the Reno Reporter, a Weekly Publication, dated September 22, 1949, and of the Retailing Daily, a Trade Paper, dated October 5, 1949 enclosed with these letters to stockholders, contained the following statements:

"The main plant of the company is in Belmont, California, by the Erie Mfg. Co., where 100–200 machines are produced daily. The Motor-Mower Co. of Detroit is also geared to produce 500–1000 lawnmowers daily and will begin production in the near future." [Reno Evening Gazette]

"At the present time, between 100 and 200 mowers are being produced daily in Belmont, California, with production to be stepped up considerably in the near future. The Motor-Mower Company of Detroit has also notified Mr. Bobbroff that their plant is geared and ready to produce from 500–1000 mowers daily once they are given the green light." [Reno Reporter]

"The new lawnmower is being manufactured at Belmont, California, where first production will come off the assembly line early in October * * * Eversharp Launwhiz, Inc. intends to manufacture its product on a contract basis, per unit price with the Belmont plant producing 100 to 200 machines daily. The Motor-Mower Co. of Detroit is being geared to produce 500–1000 lawnmowers daily and will begin production later in the fall * * *." [Retailing Daily]

The foregoing excerpts constitute uncontradicted evidence that the following representations were made, as charged in the indictment.

"That the main plant of Eversharp Launwhiz, Inc. was in Belmont, California, where Erie Manufacturing Company was producing 100–200 machines daily"; and

"That Motor-Mower Company of Detroit was geared to produce 500–1000 lawnmowers daily and was going into production in the very near future."

The falsity of the foregoing representations was demonstrated by the testimony of the production manager of Erie Manufacturing Company in Belmont, California. He stated that Erie Manufacturing Company did no more than to agree to check the lawnmower, make drawings, and after they had been approved by Eversharp Launwhiz, Inc., Erie Manufacturing Company would in a very limited way, without permanent tooling, make as many models as they could. He further testified that early in September of 1949 (one month prior to the date the letter to stockholders with its enclosures was sent out) he advised appellant that the directors of Erie Manufacturing Company had decided to go out of business and that it would be necessary for appellant to find somebody else to manufacture the lawnmowers. The company agreed to furnish a total of six lawnmowers then in the process of manufacture.

Eversharp Launwhiz, Inc. therefore never had any plant in Belmont, California, and Erie Manufacturing Company never produced anything like 100 to 200 machines daily, all well known by appellant.

With respect to the representation that Motor-Mower Company of Detroit was geared to produce 500 to 1000 lawnmowers daily and was going into production in the near future, the President of the Motor-Mower Company testified that he could have produced that amount in his factory, but it would require "tooling up", and that he negotiated with Bobbroff with respect to the manufacture of the lawnmower, but required $15,000 advance payment to "tool up." This money was never forthcoming and no contract was ever signed nor were any lawnmowers manufactured.

These facts clearly show that appellant used the mails directly in the employment of a scheme to defraud in an "offer" to dispose of further shares of Eversharp Launwhiz, Inc. to three different shareholders of that corporation in violation of the Securities Act of 1933, supra. As to the fourth such shareholder, appellant deposited in the mail an artifice "attempting" to defraud him into purchasing further shares in that corporation in violation of 18 U.S. C. § 1341, supra.

Appellant does not contend that the evidence does not show the above facts. His contention is that the mere fraudulent "offer" deposited in the mails addressed to the three shareholders and the mere "attempting" to defraud of the fourth letter is not sufficient to constitute the crimes held by the district court to have been committed. He contends that to constitute a crime each of the shareholders must have been deceived by the fraudulent "offer" or the attempted fraud. He relies on the common law cases where fraud is charged against the defendant causing damage to the plaintiff and the plaintiff must show that defendant actually deceived him to his disadvantage. He cites no case under the statutes here in question which so holds.

 To the contrary, this court has held that the Securities Act is violated upon the mere mailing of letters containing such offers. Suetter v. United States, 9 Cir., 140 F.2d 103, 107. Likewise the attempt to defraud by mailing such a letter violates the Mail Fraud Act, 18 U.S.C.A. § 1341, supra. Marshall v. United States, 9 Cir., 146 F.2d 618, 621, 157 A.L.R. 241; Alexander v. United States, 8 Cir., 95 F.2d 873, 877; Hill v. United States, 5 Cir., 73 F.2d 223, 224; Baker v. United States, 8 Cir., 115 F.2d 533, 538, certiorari denied 312 U.S. 692, 715, 61 S.Ct. 711, 85 L.Ed. 1128.

The above conclusion that these crimes were committed by appellant makes irrelevant other contentions of the appellant. The judgment imposing the four sentences is affirmed.

Affirmed.