**UNITED STATES of America,**
Plaintiff,

v.

Raymond Lee BRUNET, Everett W. Gross, Paul E. Brunet, Marvin J. Austin, and Paul J. Brunet, Defendants.

**Cr. No. 64–4.**

United States District Court
W. D. Wisconsin.

March 30, 1964.

Rabinovitz, District Judge.

N. S. Heffernan, U. S. Atty., Madison, Wis., for plaintiff.

A. E. Sheridan, Sheridan & Sheridan, Waukon, Iowa, for defendants.

The above-entitled matter involves an indictment for violation of Title 18 U.S. C. § 1341, being a mail fraud violation.

The defendant, Everett W. Gross, moves for a dismissal of all seven counts of the indictment.

Section 1341, U.S.C. of Title 18 reads as follows:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,-000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 763, amended May 24, 1949, c. 139, § 34, 63 Stat. 94."

The objections by defendant Gross are that Paragraph 1 of Count I does not allege a crime; that it is duplicitous; that it does not allege the necessary elements of the crime; and that it does not charge the required intent. Gross gives other objections to Count I, which in their composite form, are duplicative and similar to each other. A decision as to Count I will therefore encompass all of the objections.

In Count I the Grand Jury charged that the defendant Gross, together with others, devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises from various persons, some of which were named.

Count I continues and states as follows:

"* * * whom the said defendants would induce and would attempt to induce to send their money to said defendants, in payment of correspondence courses; that is to say, written and printed instructions and lessons, to be sent and delivered through the United States Mails, in training, qualifying and fitting said persons to pass Civil Service examinations, as given by the United States Government, and to educate, qualify and secure for said persons various positions of employment with the Government of the United States, well knowing at the time that the pretenses, representations and promises would be and were false when made, and which scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, so devised and intended to be devised by the said defendants was in substance as follows:

"2. It was part of the scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, that the business of selling the contracts for furnishing the said correspondence courses to said students and of inducing said students to subscribe, contract and pay for the same, would be and was carried on by and in the name of a company known as National Service which was owned, operated, and con-

trolled by the defendant Raymond Lee Brunet.

"3. It was a further part of the defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, that the defendants would and did insert numerous advertisements in various newspapers published in various areas, which advertisements would induce the aforesaid students to believe that National Service was engaged in selecting and training men and women for employment in attractive positions with the United States Government, many of which required only eighth grade education and no experience and had high starting salaries, advancements, no lay-offs, and security.

"4. It was a further part of the defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, that the defendants would and did circulate through the mails various letters, circulars and other printed advertising matter, which printed matter so circulated through the mails would and did induce the student to believe that federal, state and local governments need more than one million replacements each year, that Civil Service workers are able to maintain a good standard of living, buying homes—cars and giving their children a good education, that National Service 'field counselors' are able to determine a person's qualifications for specific positions listed by one personal interview, that Civil Service means security in that the firm cannot fail, there are no strikes or lay-offs, there are periodic pay raises, paid vacations, paid sick leave, and retirement for old age, that the only qualifications necessary for some twenty-six out of thirty jobs listed is an eighth grade education, and that there are many attractive positions open.

"5. It was a further part of the defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, that upon one of the said students agreeing to subscribe for one of the aforesaid correspondence courses he or she would be required to enter into a contract with National Service by which he would agree to pay for such course a certain amount of cash at the time of the execution of the contract and the balance of the purchase price thereon in monthly installments until paid in full, the total price of said course ranging from $175.00 to $197.50, said contract being designated as an "Enrollment Agreement"; it was represented by the terms of the aforesaid contract that National Service was a 'private school' and that the enrollment and payment of tuition entitled the student to continuous training and coaching until a Civil Service appointment is obtained, but that this is not a guarantee of a job, and that if the student's enrollment application was not accepted all of his money would be refunded in full.

"6. It was a further part of the defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations and promises, that by means of the heretofore described advertisements placed in newspapers and the heretofore described printed matter sent through the mails and, further, by means and use of numerous false pretenses, representations and promises, as hereinafter more particularly described, which were communicated to said victims orally by the agents, representatives and salesmen of National Service, the said students were induced to believe that National Service was engaged in selecting men and women for employment with the United States Government

and that by enrolling as a student and by completing the correspondence course offered by National Service the student would be assured and guaranteed of securing a specifically designated position with the Government within a short period of time or if he failed to do so would continue to receive training and coaching by National Service until such position were secured by him; that in truth and in fact as the said defendants at all of the times herein mentioned well knew and intended said National Service was not a 'school' at all but was engaged solely in the business of selling contracts for the correspondence courses aforesaid to the general public and to any one who could be induced to subscribe and contract for the same, regardless of the preliminary education, qualifications or physical or mental fitness of the student to meet the requirements of the Civil Service examinations for selection and appointment to a position with the United States Government and which courses and training were not furnished by National Service at all, but by Western Coaching Bureau of San Francisco, California, the courses being furnished by said Western Coaching Bureau to the students enrolled by National Service upon payment of the total sum of $10.00 cash or $15.00 in installments by National Service to Western Coaching Bureau, and for which said National Service in turn charged the students various amounts ranging from $175.00 to $197.50; and all of which said false representations, pretenses and promises would be and were made to said victims for the purpose of inducing said students to subscribe and contract for said correspondence courses, and to pay and send their money in payment therefor to said defendants in manner and form as aforesaid.

"7. It was a further part of the defendants' scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, that the defendants would make and cause to be made the following specific false and fraudulent pretenses, representations and promises, all of which said defendants, and each of them, at all the times herein mentioned well knew and intended to be false and fraudulent:

"(1) That persons who took and subscribed for the so-called course of instructions and completed them would be certain to have a job in Civil Service.

"(2) That if the persons who completed the course of instruction thereafter failed a United States Civil Service examination, National Service would continue to train such persons without additional cost until they passed the Civil Service examination and received an appointment.

"(3) That there were and would be shortly after the student completed the course a vacancy nearby in the particular category of job in which the student expressed an interest and that if the student completed the course he would be guaranteed of obtaining that position at a stated salary by a certain date.

"(4) That examinations for the various United States Civil Service positions in which the student stated he was interested would be held shortly after the completion of the said correspondence course by the student.

"(5) The fee of $175.00 for the course was used to pay the girl in La Crosse, Wisconsin, who corrected the tests and assisted the student in taking the training.

"(6) That once a person enrolls, National Service is put to great expense in payment of the

representative and the instructional department.

"That all and singular the aforesaid representations, pretenses, and promises were wholly false and fraudulent, and were not true in fact, as was then and there well known to the defendants, and to each of them, said false and fraudulent pretenses, representations and promises being made to the students knowingly and willfully, and for the purpose of inducing the student to enroll with National Service and to pay to said defendants his or her money for said correspondence course.

"8. On or about the 22nd day of August, 1961, at La Crosse, in the Western District of Wisconsin, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, caused to be placed, in a post office or authorized depository for mail matter an envelope addressed to Mr. Donald Rupprecht, Rt. 1, Lewiston, Minn., to be sent or delivered by the Post Office Department."

Count I alleges that on or about August 22, 1961, at La Crosse, the defendants, including Gross, for the purpose of executing the scheme and artifice to defraud, caused to be placed in the post office for mail matter an envelope addressed to Mr. Donald Rupprecht, Rt. 1, Lewiston, Minn., to be sent or delivered by the Post Office Department. Count I further alleges that Rupprecht was harmed thereby.

All that precedes Paragraph 8 of Count I can be considered as preliminary, explanatory, or informative matter, which is to be commended inasmuch as it is more than a "naked" allegation. It presents the background of the allegations for all the Counts in the Indictment.

The form of the Indictment used by the United States Attorney is substantially the same as provided for in Form 3, Title 18, U.S.C.A., Appendix of Forms, Federal Rules of Criminal Procedure.

In United States v. Hoffa, 205 F.Supp. 710 (S.D.Fla.Orlando Div., 1962), cert. den., 371 U.S. 892, 83 S.Ct. 188, 9 L.Ed. 2d 125, the trial court stated:

"This indictment, which alleges that the mailings involved therein were made in furtherance of the execution of the scheme, follows the language set forth in the forms suggested by the Federal Rules of Criminal Procedure, Title 18, with regard to mail fraud indictments. * * * This is sufficient."

This method and form of stating preliminary matters, and then following the preliminary introduction setting up the various counts is indeed helpful to the court, and also helpful to the petit jury on the trial of the case.

In Milan v. United States, 5 Cir., 322 F.2d 104, at page 108, the court states as follows:

"The indictment, after setting out the names of the defendants in Count I, described in great detail the operation of Metropolitan, and in the same paragraph connected these defendants to Metropolitan. In subsequent counts, the indictment re-alleged all the facts in the first paragraph of Count I and then identified the mailing.

"We think the indictment was sufficient. The gist of the offense charged under § 1341 is that the mails are used to further a fraudulent scheme or device. Once the fraudulent scheme is alleged and established, the only other requirement under the statute is that there be a use of the mails in furtherance of such scheme. Abbott v. United States, 5 Cir., 1956, 239 F.2d 310, 314; Marvin v. United States, 10 Cir., 1960, 279 F.2d 451; Palmer v. United States, 10 Cir., 1955, 229 F.2d 861, cert. denied, 1956, 350 U. S. 996, 76 S.Ct. 546, 100 L.Ed. 861; Webb v. United States, 10 Cir., 1951,

191 F.2d 512. The first count of the indictment here described that scheme in great detail. Each subsequent count realleged that scheme and then charged a specific instance in which the mails had been used in furtherance of the scheme. It is not necessary that the indictment allege that the mailed material contain false representations or that it contain requests for money or property as long as the indictment alleges and the proof subsequently shows that the mailings were an essential part of the scheme."

█ The gist of the offense charged is that there be a fraudulent scheme, and that there be a use of the mails to perpetuate this scheme. The court believes that Count I conforms in all respects to the requirements of the Statutes.

█ This motion has been made preliminary to trial. To add more to the indictment or to specify what the Government has stated would be pleading evidence, which is not required. The Government need not plead in its indictment what the representations were, or that any money or property was requested, as long as it shows the essential element, namely that of placing in the mails *any matter or thing* to be delivered by the Post Office Department.

█ All that the defendants are entitled to in an indictment, or information, is to be adequately protected against any surprise by the proof presented by the Government, and to be apprised of what the Government charges in the matter. This the indictment carries out. The court does not see how the indictment could possibly be more specific than the one involved here. If anything, there is much information that could have been omitted as constituting too much information. However, the court believes in and encourages the use of indictments which clearly set forth the issues and gives to the defendants more information than they are ordinarily entitled. The court therefore feels that Count I more than

adequately complies with the Statute. It will stand.

█ The defendant moves to strike Count II on the ground that it is replete with incompetent, irrelevant and immaterial conclusions and opinions not based upon any statement of fact. The court cannot accept this reasoning. There has not been a trial in this matter as yet, and facts have not been elicited to warrant a judgment in respect to the allegations in this matter.

█ Count II alleges a violation framed in the language of the Statute. It alleges the essential elements, namely, a scheme to defraud and causing said scheme to be transmitted through the Government mails. The words "false", "fraudulent", "scheme" and "artifice" are used in the Count which sufficiently shows intent to defraud. That required intent is an essential element of a scheme and artifice to defraud by obtaining money by false and fraudulent pretenses.

█ The test of the sufficiency of an indictment is whether it adequately informs the defendant of his alleged offenses so as to provide him with due notice, and allow him to plead double jeopardy, if at a later trial the Government were to attempt to try him for the same offense. The offense is clearly set forth in the Count. The essential language of the statute is used throughout the indictment and it makes clear the full nature of the offense as charged.

The same objections essentially are made by the defendant Gross to the remaining Counts, which are worded in substantially the same way.

█ Defendant Gross alleges further that it is a requisite of an indictment to charge a person with having successfully defrauded; that the mere attempt to defraud is not enough. He cites U. S. v. Baren, 2 Cir., 305 F.2d 527, which does state on page 528:

"In every mail fraud case, there must be a scheme to defraud, representations known by defendants to be false and some person or persons must have been defrauded."

In United States v. Rabinowitz, 6 Cir., 327 F.2d 62, at page 76, decided January 22, 1964, the court cites the Baren case and says as follows:

"This was the Government's case. In every mail fraud case there must be a scheme to defraud, representations known by defendants to be false and some person or persons must have been defrauded. * * * The scheme to defraud must have included the intent to do so. Even if the statements complained of were false, defendants must have known them to be false and they must have intended to defraud in order to be found guilty."

There are cases which hold that it need not be shown that someone suffered a loss. Indeed, the Standard Instructions in 27 F.R.D. page 152, Section 21.-09, read as follows:

"The gist of the offense charged in the indictment is the willful use of the mails in carrying out, or attempting to carry out, a scheme to defraud as charged, and not the scheme itself. *So the success or failure of the scheme is immaterial.*

"(See: United States v. Crummer, 10 Cir., 1945, 151 F.2d 958, 962–963, certiorari denied 1946, 327 U.S. 785, 66 S.Ct. 704, 90 L.Ed. 1012; Marshall v. United States, 9 Cir., 1944, 146 F.2d 618, 620, 157 A.L.R. 241.)"

However, the court believes that inasmuch as the Baren and Rabinowitz cases, supra, are so recent, it is inclined to follow them in this and future cases. The court will instruct the jury that some person or persons must be defrauded.

The fact that persons were defrauded is clearly alleged in Count I where the Government states that money was obtained from certain persons. Furthermore, the matter of whether persons were actually defrauded is a question of proof and the Government will have to be prepared to substantiate the allegations of the indictment.

The further argument of the defendant that Count I alleges numerous names of persons alleged to have been defrauded, and then in paragraph 8. alleges one name, is not persuasive, because the first part of Count I is preliminary and alleges the names of all the persons defrauded, and then the remaining Counts allege the individual acts as pertains to each mailing. Furthermore, each subsequent Count realleges that scheme and then charges the specific instance in which the names had been used in furtherance of this scheme. This is sufficient to charge offense of use of the mails to defraud.

■ Each mailing constitutes a separate violation and it has been consistently held by the Supreme Court and the Courts of Appeals that each separate use of the mails in the execution of the scheme to defraud constitutes a separate offense. See, Milan v. United States, 322 F.2d 104:

"E. g., Badders v. United States, 1916, 240 U.S. 391 [36 S.Ct. 367, 60 L.Ed. 706]; Durland v. United States, 1895, 161 U.S. 306 [16 S.Ct. 508, 40 L.Ed. 709]; In Re Henry, 1887, 123 U.S. 372 [8 S.Ct. 142, 31 L.Ed. 174]; Marvin v. United States, 10 Cir., 1960, 279 F.2d 451; Palmer v. United States, 10 Cir., 1955, 229 F.2d 861, cert. denied, 1956, 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861; Stumbo v. United States, 6 Cir., 1937, 90 F.2d 828, cert. denied 302 U.S. 755 [58 S.Ct. 282, 82 L.Ed. 584]."

Defendant also claims that the use of the word "envelope" in the indictment is deficient and inadequate in charging a crime.

The statute distinctly states that it is a crime for "any matter or thing whatever to be sent or delivered by the Post Office Department".

■ It might have been better pleading for the indictment to state that there

 

was a letter sent in an envelope and alleging the articles or schemes contained in the letter. However, in view of the wording of the statute that states merely "matter or thing", it becomes a matter of proof as to what is contained in the envelope. Certainly after stating the date the envelope was mailed, to whom it was mailed by the defendants, and at what city it was mailed, the defendant cannot claim that he is surprised or has not been apprised of the gist of the offense.

Furthermore, the defendant cites the case of United States v. Berg, 3 Cir., 144 F.2d 173, at page 176, which states as follows:

"In order to constitute an offense under section 215, supra, it is necessary that a scheme to defraud be devised, and that afterwards a letter, postal card, package, writing, circular, pamphlet, or advertisement be placed in the mails for the purpose of executing the scheme, or attempting to do so. United States v. Young, 232 U.S. 155 [34 S.Ct. 303, 58 L.Ed. 548]; Depew v. United States, 3 Cir., 255 F. 539; Newingham v. United States, 3 Cir., 4 F.2d 490; Blue v. United States, 6 Cir., 138 F.2d 351. But the matter mailed need not be effective in carrying out the scheme. Newingham v. United States, supra. It is not necessary that as the result of the particular matter mailed, the addressee be defrauded or suffer any loss. Cowl v. United States, 8 Cir., 35 F.2d 794; United States v. Rowe, 2 Cir., 56 F. 2d 747. And it is not essential that it disclose on its face a fraudulent purpose. Chew v. United States, 8 Cir., 9 F.2d 348. But it must have some relation to the scheme, and be mailed with the intent of assisting in carrying such scheme into effect. Durland v. United States, 161 U.S. 306 [16 S.Ct. 508, 40 L.Ed. 709]. It does not require elucidation or elaboration to make it crystal clear that these letters had some relation to the scheme laid in the indictment, and that they were mailed with the intent of assisting in carrying the scheme into effect. That was enough."

This citation does not fortify the position of the defendant, especially in light of the Rabinowitz case, but to the contrary indicates that anything that is mailed for the purpose of executing a scheme is a violation of the statute.

In the Berg case the contentions of the defendant were alleged after trial. We are not yet at trial in the instant matter and it will be incumbent upon the Government to state whether the envelope contained either a letter, circular, writing, pamphlet, advertising, or any other matter for the purpose of effecting a scheme to defraud.

The court has covered all the allegations in the motion for the defendant Gross, and hereby denies all of the motions to dismiss as pertains to all seven counts in this matter.