Fred L. BLISS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18030.

United States Court of Appeals
Eighth Circuit.

Jan. 12, 1966.

Hyam Segell, St. Paul, Minn., presented argument to the Court and filed brief for appellant.

Hartley Nordin, Asst. U. S. Atty., Minneapolis, Minn., presented argument to the Court and submitted brief together with Miles W. Lord, U. S. Atty., for appellee.

Before VOGEL, Chief Judge, and BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

Fred L. Bliss, by indictment in three counts, was charged with a violation of the mail fraud statute, 18 U.S.C. § 1341. He entered a plea of not guilty. Trial by jury was waived in the manner prescribed by Rule 23(a), Fed.R.Crim.P. After trial to the court the defendant

was found guilty on all counts. Judgment of conviction was entered and a general sentence of five years was imposed. Bliss appeals.

The facts, not surprisingly, have aspects of complexity about them. The case centers, however, on representations made by the defendant as to the value and integrity of contracts for deed and equities in real estate, particularly those premises improved with a duplex at 1323 Girard Avenue North, Minneapolis, and in the concealment of existing encumbrances.

The defense does not deny that, viewing the record in the light most favorable to the government, "the badges of fraud exist". It asserts, however, that this is so only in the context of a number of purely local and individualized transactions; that there was no "scheme or artifice" here, within the statutory language; and that § 1341 has no application to the isolated transactions revealed by the record. There was no state prosecution.

Bliss was engaged full time in the real estate business in Minneapolis. He placed advertisements in newspapers for the sale of contracts for deed. People responded. Among them were Gust Weiss of Lakeville and Irvin Lockwood of Mound, Minnesota; these two were specifically named in the indictment's three counts.

The defense argues (A) that the use of the mails after a scheme to defraud has reached fruition is not an offense under the statute; (B) that the payment of money (checks or money orders which were paid at par) by mail does not constitute a use of the mails "for the purpose of executing [the] scheme"; and (C) that the evidence as to the third count (Lockwood) was so equivocal that it was insufficient to justify conviction on that count.

 A. The scheme to defraud. One must recognize, as the defense asserts, that it has been said that a mere succession of unrelated and diverse swindles, even though they possess "a common

stage", is not within the reach of the mail fraud statute. McLendon v. United States, 2 F.2d 660, 661 (6 Cir. 1924); Dyhre v. Hudspeth, 106 F.2d 286, 288 (10 Cir. 1939). And it has been held that a use of the mails after a scheme to defraud has been completed is not a use for the purpose of executing the scheme and thus is not an offense under the statute. Marshall v. United States, 146 F.2d 618, 620, 157 A.L.R. 241 (9 Cir. 1944); McNear v. United States, 60 F. 2d 861, 864 (10 Cir. 1932); Stewart v. United States, 119 F. 89, 95–96 (8 Cir. 1902); Kann v. United States, 323 U.S. 88, 94, 65 S.Ct. 148, 89 L.Ed. 88 (1944); and Parr v. United States, 363 U.S. 392–393, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), are among the cases to this general effect cited by the defense.

 At the same time, however, certain of these and other cases recognize that use of the mails, even after money has been obtained, is within the reach of the statute if it is for the purpose of executing the scheme, as, for example, the lulling of victims and the continuance of the relationship between the schemer and his victims. United States v. Sampson, 371 U.S. 75, 81, 83 S.Ct. 173, 9 L. Ed.2d 136 (1962); McNear v. United States, supra, pp. 863–64 of 60 F.2d; Marshall v. United States, supra, p. 621 of 146 F.2d; Adams v. United States, 312 F.2d 137, 139–140 (5 Cir. 1963). See Wiltsey v. United States, 222 F.2d 600, 601 (4 Cir. 1955).

This court dealt with this very situation in our recent case of Friedman v. United States, 347 F.2d 697, 709–711 (8 Cir. 1964). We there upheld the conviction of the appellant O'Grady who had argued that count letters were mailed after the victims had parted with their money and thus were not established as being for the purpose of executing the scheme to defraud. Chief Judge Vogel said, p. 710:

"Here the appellants were charged with an overall scheme beginning about January 1, 1957, to about May 20, 1962, to defraud students and prospective students of money.

Among the students so named were the count victims of 4 and 5. In the instant case all of the various contract sales to students and prospective students were but parts of the overall or unitary scheme to defraud."

See Butler v. United States, 317 F.2d 249, 255–56 (8 Cir. 1963), cert. denied 375 U.S. 836 and 838, 84 S.Ct. 67 and 77, 11 L.Ed.2d 65.

It would serve no good purpose for us to recite here at length the complicated facts and the details of the approach made by Bliss to each of the many witnesses who testified in this case. It suffices to say that the testimony disclosed highly colored representations by Bliss as to property, as to the profitability of the investment, and as to the character of the obligee. Victims received a few payments on their contracts for deed and then no more. The payments to Weiss and the envelopes in which they were mailed purported to be those of remitter-vendee L. David McLean but were actually sent and mailed by Bliss. Weiss continued to receive new offerings by mail from Bliss while the pretended McLean payments were being made.

■ We hold as to this first point that our decision in Friedman, supra, controls the present case. We may paraphrase Judge Vogel's language there by stating that here Bliss was charged with an overall scheme, from about March 1, 1960, to about February 10, 1965, to defraud various prospective purchasers of contracts for deed and of equities, and that all the various sales were but parts of the overall or unitary scheme to defraud. The record convinces us, as it did the district judge, that these were not isolated and unrelated swindles; that the checks were lulling devices which comprised part of the basic scheme and its desired continued perpetration; and that the scheme applied to persons already victimized to make them a prey for additional investment and to open the way for the successful pursuit of the scheme as to others. Beasley v. United States, 327 F.2d 566, 568 (10 Cir. 1964), cert. denied 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307, and Cacy v. United States, 298 F.2d 227, 230 (9 Cir. 1961), are cases which are also pertinent authority on this first point.

■ B. The payment of money by mail. The defense refers to these payments as "in response to a legal obligation under a contract or mortgage" and emphasizes "that nothing accompanied these checks and that the checks were paid at par", and that there "would have been no fraud if payments had been made in full".

What we have said above constitutes an answer to this issue, as well as to the first. We point out, in addition or repetitively, as the case may be, that the payments were made by Bliss and not by the purported vendee; that Bliss was under no contractual obligation to make them; that the payments, under the McLean guise, were pretended ones and thus not actual payments at all; and that the receipt book which Bliss gave Weiss even contained entries of purported but non-existent earlier payments. Under these circumstances, we see nothing significant, as has been suggested, in the absence of letters accompanying the checks.

Although not identical on its facts, the case of Clark v. United States, 93 U.S. App.D.C. 61, 208 F.2d 840 (1953), cert. denied 346 U.S. 865, 74 S.Ct. 105, 98 L.Ed. 376, is significant. There, too, the defendant had sent the victim checks from his own funds in purported payment of semi-annual interest under an investment agreement he was to have made with an insurance company. The court said, p. 841:

"Thus any action on the part of appellant which represented efforts on his part to continue the representation that the money was invested, and efforts by him to keep the money, constituted activities 'for the purpose of executing such scheme or artifice or attempting so to do'. Placing in a post office any matter to be sent or delivered by the

Post Office Department for such purpose is an offense under the statute."

C. The evidence on the third count. This count concerned Lockwood and charged that, as a part of the scheme to defraud, the defendant, on or about May 7, 1963, attempted to negotiate a sale to Lockwood of the vendor's interest in a contract for deed on the Girard Avenue property and on or about that date placed in the mails a letter directed to Mr. Lockwood.

Here, again, the defense argues that the defendant, by May 7, had already received proceeds from his transactions with Lockwood; that whatever was mailed on that date was not a part of the scheme alleged in the indictment; that the envelope to Lockwood bearing the date of May 7 must have contained a $5.50 check of that date; that the flyer which Lockwood said was in the envelope was one prepared in 1962 and thus was not likely to have been mailed in May 1963; and that, therefore, the evidence is so ambiguous that conviction under this count cannot stand.

■ We do not agree. Much of this argument is properly for the trier of fact, not an appellate court. Further, Lockwood had already made other purchases from Bliss. He testified repeatedly that the envelope of May 1963 contained the flyer. He was an intended victim as to the Girard Avenue property. The evidence was clearly sufficient to support the conviction on Count III. The trial court, indeed, thought it the best of all the counts for it said, "I think you made a good case as to Count III and an adequate one as to Counts I and II". We cannot say otherwise.

We note that, after the trial court had found the defendant guilty on all three counts, it mildly admonished the assistant United States attorney about prosecuting a case of this kind. It said:

"I hope you and your associates won't bring any more cases like this. I think it's an adequate case under the Mail Fraud Statute, but I doubt if the Congress ever intended that local cases like this should be prosecuted in the Federal court.

"If this man has been cheating people, and it appears to me he has been, he must be violating all kinds of State laws, and the County Attorney should be prosecuting. Here it is a local situation, local people involved, and I think you have to stretch some to find the mailing situation in a case like this."

The defense has seized upon these comments in support of its argument that no mail fraud offense was proved here and that Bliss effected nothing more than a series of localized and unconnected swindles. The trial judge, however, was merely expressing his policy attitude and his wish not to have the federal government "concern itself with prosecuting every wrong that exists in a community". These post-trial and pre-sentence remarks certainly did not deny the existence of a federal crime on the record in Bliss's case. After all, he had just adjudged him guilty.

Affirmed.