## ARMSTRONG v. UNITED STATES.

### No. 712.

Circuit Court of Appeals, Tenth Circuit.

June 29, 1933.

854

O. S. Booth, of Tulsa, Okl. (Harry S. Bowman, of Santa Fé, N. M., on the brief), for appellant.

Hugh B. Woodward, U. S. Atty., and Gilberto Espinosa, Asst. U. S. Atty., both of Albuquerque, N. M.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

The appellant was convicted on three counts of an indictment charging the use of the mails in execution of a scheme to obtain money by false and fraudulent pretenses, representations, and promises. 18 USCA § 338.

The scheme alleged in each count is that the defendant organized a corporation known as the New Mexico Service Bureau, Inc., and that as an officer of such corporation, he invited the public, at various places in other states, to visit a railroad car in which he displayed the natural resources of the state of New Mexico. He represented to prospective clients that the corporation was engaged in the business of rendering service as locating engineers and resident agents in the selection and purchase of public lands from the state of New Mexico which could be bought for a down payment of 5 per cent. with the balance payable over a period of 30 years with interest at 4 per cent. The indictment charges that he made false and fraudulent representations as to such state lands, including the amount of rainfall. That by such means he induced certain persons to enter into contracts employing the corporation as their agent and attorney to secure for them so much of the public lands in New Mexico as might be agreed upon at a stipulated price. That it was part of such scheme that after having collected the fee for such services, he would neither apply for nor purchase public lands of the state of New Mexico, but on the contrary would attempt to induce his clients to purchase deeded lands of an entirely different character and upon entirely different terms from those he represented were obtainable from the state; that in pursuance of such effort, he would attempt to collect further fees from his clients, and in the event of his failure, he would either cease to write them or give untrue and evasive answers, and appropriate to his own use the moneys paid at the time the contracts were signed, without rendering any service therefor. The indictment charges the use of the mails in the execution of such scheme on October 6 and October 9, 1929.

Several of those who entered into contracts with the Bureau, at appellant's solicitation,

testified. Most of them were artisans or small business men from eastern states. Their testimony was to the effect that appellant represented that he could procure state lands for them, which they were desirous of acquiring on the favorable terms accorded by the state. None of them was interested in privately owned "deeded" lands, and there was no talk of anything except state lands. Representations as to rainfall, and as to oil and other minerals which they might acquire by their purchase of state lands, were made. The display in the car included minerals. To one prospect, appellant represented that state lands could only be purchased through an agent. Each signed a printed contract with the Bureau, and paid a substantial fee for services to be rendered.

The contract recites that the Bureau is engaged in the business of locators, attorneys, and engineers, for the purpose of representing nonresident investors in the purchase of New Mexico, lands; the Bureau represents that much of the "State land" is valuable for agricultural purposes, and that "State land may be purchased from the State Land Department of New Mexico in accordance with the rules and regulations of the Public Land Code" for not less than $3.00 or $5.00 per acre, depending upon the location; that such Public Land Code provides that the purchaser of state land is required to pay 5 per cent. down, the balance in 30 years at 4 per cent., and that "patent will issue when final payment is made. Residence or improvements are not required on state lands." The contract contains other references to the State Land Department and to state lands. The contract clearly discloses that the subject matter thereof is public lands of the state of New Mexico. Ingeniously enough, by the contract the Bureau agrees to represent the second party "in the purchase of New Mexico lands" and to locate, secure data, and send the client plats of such lands. The Bureau further guarantees to secure for its clients the number of acres stipulated in the contract, or to return the money with 7 per cent. interest. The client agrees to furnish to the Bureau, 10 days prior to any sale, a sum equal to 5 per cent. of the maximum price of the land to be acquired as set forth in the attached specification, together with a power of attorney authorizing the Bureau to represent the client in the purchase "of New Mexico Lands."

The evidence further discloses, as to some of the clients, that no plats for state lands were sent, but that instead plats of privately owned lands were furnished, which could be acquired on different terms, without explanation; that demand was made that the Bureau either acquire state lands as agreed, or refund the moneys theretofore paid. That neither was done.

One of the clients testified that he received no plats for state lands, but did receive plats for deeded lands, and after some correspondence, he did buy a tract of deeded land and paid on the same. Another received a plat, which he assumed to be of state lands, but in the letter accompanying the same, he was asked to send a check for the first payment thereon to one Hanna. Later he received a letter from Hanna advising him that Armstrong, as attorney in fact for the client, had contracted to buy lands owned by Hanna.

It was further proven, without contradiction, that neither the appellant nor the New Mexico Service Bureau, made any application to purchase state lands during the year 1929. There was also evidence that the rainfall, on state lands available for purchase, was substantially less than it was represented to be. Appellant himself testified that "in the state lands the oil and gas and mineral rights were reserved in the state."

For the defense, there was evidence that Armstrong arranged in June of 1929 to bid for school lands for nonresident investors, and that he caused plats to be prepared disclosing the location of such lands, part of which were then under lease. That he intended to go forward with the agreement to purchase state lands for his clients, but that in September, 1929, the Land Commissioner, without right, declined to receive any applications to purchase state lands through the appellant or his corporation. That thereupon he was advised by competent counsel that under the contracts in question he had a right to purchase for his clients privately owned land instead of state land; and that, in reliance upon such advice, he did substitute, or attempt to substitute, privately owned lands for the state lands which were the subject matter of his representations and contract. He denied all charges of fraud or fraudulent representations.

▮ 1. The first error assigned is that the trial court erred in overruling a motion to dismiss the indictment, interposed after the jury was impanelled. The grounds of the motion were that there was no allegation of intent to deceive in the indictment nor any allegation that false statements were made with the knowledge of the defendant that they were false. This assignment is without substance. The only objections to an indict-

856

ment which are available after the jury has been impanelled are those going to the substance and not to the form of the indictment. Benson v. United States (C. C. A. 5) 240 F. 413; Murdick v. United States (C. C. A. 8) 15 F.(2d) 965. Furthermore, a motion to dismiss interposed after the jury is impanelled and before the introduction of evidence is equivalent to an objection to the introduction of evidence under the indictment. The sufficiency of an indictment cannot be tested by an objection to the introduction of evidence, even if disguised as a motion to dismiss. Wild v. United States (C. C. A. 8) 291 F. 334; King v. United States (C. C. A. 10) 55 F.(2d) 1058. And still further, the indictment is not defective in form, for an allegation that representations are false and fraudulent fairly apprises the defendant of a charge that he knew the representations were false, and intended thereby to deceive.

■ 2. Error is assigned because the trial court overruled the motion for a directed verdict at the close of the government's evidence. But this point passed out of the case when the defendant thereafter introduced evidence.

■■ 3. The principal error argued in the brief is that the trial court should have directed a verdict at the close of all the evidence, or should have set aside the verdict as contrary to the evidence. But no such request was made of the trial court. Under decisions too numerous to cite, the sufficiency of the evidence to support the verdict is therefore not before us. It is true that an appellate court has the inherent but discretionary power, where life or liberty is involved, and in order to prevent a plain miscarriage of justice, to examine the record for the purpose of determining whether there is a complete failure to prove the crime charged. Wiborg v. United States, 163 U. S. 632, 658, 16 S. Ct. 1127, 41 L. Ed. 289; Sykes v. United States (C. C. A. 8) 204 F. 909; Bogileno v. United States (C. C. A. 10) 38 F.(2d) 584; Edwards v. United States (C. C. A. 8) 7 F.(2d) 357. But this is an exceptional power, to be sparingly used. Nevertheless, we have examined this record.

■ The substance of the scheme charged is that the appellant lured his prospects into entering into these contracts, and paying in advance for services agreed to be rendered, by appealing to the natural desire of people to acquire state or government lands at low prices and upon favorable terms. That after having induced them to sign such contracts by false representations, his purpose was to palm off upon them privately owned land, and to enter into contracts obligating them to purchase such lands and to pay to the sellers the purchase price thereof. There is ample evidence that flagrantly false representations were made. It was represented to proposing purchasers that they would acquire the minerals that might underlay the lands offered them; these representations were express in part and implied in all by the display of the minerals in the car. Yet the facts are, as testified to by the appellant, that there was no possibility of any client acquiring any mineral rights in the state lands which he purported to sell to them, for the minerals were reserved to the state. These representations as to oil and minerals bear strongly upon the question of whether there was an intent to sell to clients privately owned lands instead of the state lands which he represented he would procure for them. It is not probable that appellant believed that his clients would not notice the fact that their contracts for state lands excluded minerals; the more reasonable assumption is that at the outset, when the representations as to minerals were made, he intended to sell them privately owned lands which carried the mineral rights. The important misrepresentation as to rainfall also has some significance upon the question of his original fraudulent intent. The cleverly devised contract, with its repeated references to public lands, the Public Land Code, and the State Land Department, and its use of the general phrase "New Mexico lands" in the vital part of the agreement, is also a significant circumstance as to the intent of appellant when the contract was signed. The appellant's protestation of good faith is seriously impaired by considering the fact that while the oral and written representations concerned public lands, and that he agreed to return the moneys advanced with 7 per cent. interest in event of his failure to acquire such land, that when he found he was unable to procure such lands he did not return the money. The contention that the letters were not written until after the offense had been completed is not one that appeals to a court in the exercise of its unusual discretion to review the evidence in the absence of a motion for a directed verdict. It is true that the location fees were collected prior to the mailing of the letters, but the indictment charges that it was a part of the scheme that deeded lands were to be substituted and additional fees collected, and the evidence supports this allegation of the indictment. The scheme therefore was a continuing one and was still in progress at the time the letters were mailed.

Stewart v. United States (C. C. A. 8) 300 F. 769; Freeman v. United States (C. C. A. 7) 244 F. 1, 9; Lewis v. United States (C. C. A. 9) 38 F.(2d) 406, 416; Newingham v. United States (C. C. A. 3) 4 F.(2d) 490. Not only was that intent a part of the original scheme, but the record discloses that the scheme succeeded as to Mr. Donahoe, for he paid an additional engineering fee, and made a payment on the land, after and as a result of the use of the mails set out in count three. We conclude that there is ample evidence in the record to support the verdict of the jury.

■■ 4. Many errors are assigned as to the charge of the court. The appellant requested the court to charge the jury that there could be no conviction unless there was an intent to defraud at the time the contracts were signed. The court declined to make the precise time controlling, but instructed that at the time any false representation was knowingly made, it must have been made with an intent to obtain money, and that the letters must have been mailed in carrying out the scheme. If letters are mailed in execution of a scheme then existing to obtain money under false pretenses, it is sufficient. It is not necessary to prove that the scheme was devised at any particular time prior to the mailing of the letters, so long as it was proven to have existed when the mails were used in execution thereof. The gist of the offense is the use of the mails. Havener v. United States (C. C. A. 10) 49 F.(2d) 196, certiorari denied 284 U. S. 644, 52 S. Ct. 24, 76 L. Ed. 547; Olsen v. United States (C. C. A. 2) 287 F. 85; Humes v. United States (C. C. A. 8) 182 F. 485. While the indictment averred a fraudulent scheme from the start, the variance would not be fatal if the proof disclosed that the scheme came into existence a few days later, as long as it was proven to exist, substantially as alleged, when the letters were mailed. General objections are made to the charge on the ground that it is vague and misleading. The court clearly charged the jury as to the elements of the crime, and the necessity of the government proving such elements beyond a reasonable doubt. If confusion there is in the charge, it is in that part which undertakes to clarify by the use of illustrations. If the illustrations are vague or obscure, as counsel contend, the effort to clarify may have been nullified, but there is nothing to support the claim that appellant's rights were prejudiced by illustrations neutralized by obscurity.

We conclude, therefore, that the judgment should be affirmed.