James Robert PALMER, Appellant,

v.

UNITED STATES of America,
Appellee.

Lenore PALMER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 5113, 5114.

United States Court of Appeals
Tenth Circuit.

Dec. 14, 1955.

Writ of Certiorari Denied
March 26, 1956.

See 76 S.Ct. 546.

Eugene H. Tepley, Denver, Colo. (Roy O. Goldin, Denver, Colo., was with him on the brief), for appellants.

Donald E. Kelley, U. S. Atty., Denver, Colo. (Robert Swanson, Asst. U. S. Atty., Denver, Colo., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, HUX-MAN, Circuit Judge, and SAVAGE, District Judge.

SAVAGE, District Judge.

Appellants, James Robert Palmer and Lenore Palmer, were convicted on Count 1 of a five-count information of using the mails in a scheme to defraud in violation of 18 U.S.C. § 1341. Palmer was convicted on Counts 2, 3 and 4 of using the mails to defraud in the sale of securities in violation of 15 U.S.C.A. § 77q(a) (1), and was also convicted on Count 5 of another violation of the mail fraud statute. Mrs. Palmer was placed on probation for a period of three years. Palmer was sentenced to a term of imprisonment of three years on each count, the sentence on Count 2 to run consecutively to the sentence imposed on Count 1 and the sentences on Counts 3 and 4 to run

concurrently with the sentence imposed on Count 2 and the sentence on Count 5 to run concurrently with the sentence imposed on Count 1.

Appellants were charged in Count 1 with having devised a scheme and artifice to defraud purchasers of chattel mortgages executed in favor of James Robert Palmer and Lenore Palmer, doing business as Ace Motors, and to obtain money and property by false and fraudulent pretenses from such purchasers. It was alleged that, for the purpose of executing the fraudulent scheme, the appellants caused to be placed in the United States mail two certain notes and chattel mortgages which were false and fraudulent.

Appellants complain of their convictions on this count upon grounds that, (1) the evidence was insufficient, and (2) they were prejudiced by an amendment of the information permitted during the trial.

In the spring of 1951, Ace Motors, which was owned and operated by appellants at Pueblo, Colorado, entered into a floor plan mortgage agreement whereby Denver Motor Finance, Denver, Colorado, agreed to advance money for the purpose of financing Ace Motors' new car business. By the terms of the agreement Denver Motor Finance advanced money on the security of new cars purchased from the factory. When one of the cars on which money had been advanced was sold and a note and mortgage obtained from the purchaser, Denver Motor Finance would release the car and take an assignment of the note and mortgage from Ace Motors and apply the amount thereof to reduce its indebtedness. On August 22, 1951, Ace Motors caused an "Installment Sale Contract—Note and Mortgage" to be mailed to Denver Motor Finance at Denver, Colorado, which was purportedly executed by James K. Morris on August 1, 1951, covering a 1951 Hudson 4-door Sedan, Motor No. 4A95216, in the sum of $2,041.40, and assigned by Ace Motors to Denver Motor Finance on August 22, 1951. This instrument was fictitious and fraudulent

and had been signed by Mrs. Palmer on behalf of Ace Motors and acknowledged by Palmer. The car described in the mortgage had been sold by Ace Motors to one Leandro Mestas on June 27, 1951, who paid the full purchase price. Mestas had not mortgaged the car and was the owner at the time the Morris instrument was fabricated. Payments to be applied on the Morris note were sent to Denver Motor Finance by Ace Motors.

On October 4, 1951, Ace Motors caused a second "Installment Sale Contract— Note and Mortgage" to be mailed to Denver Motor Finance at Denver, Colorado. This instrument was purportedly executed by Anita Watkins and delivered on October 4, 1951, covering a 1951 Hudson 4-door Sedan, Motor No. 8A106228, in the sum of $2,000, and assigned on the same date by Ace Motors to Denver Motor Finance. It was also false and fraudulent. The car described had been sold by Ace Motors to one Byron A. Wydman on July 10, 1951. Wydman was the owner of this car at the time the Watkins instrument was fabricated. Palmer personally sold this car to Wydman, who obtained a loan from A. W. Otterstein on July 10, 1951, secured by a chattel mortgage on the car, and used the proceeds to complete payment. This chattel mortgage to Otterstein was executed in Palmer's office at the time of the sale. Payments on the Anita Watkins note were made by Ace Motors. Anita Watkins was Lenore Palmer's name by a former marriage. To allay suspicions with respect to this transaction, Mrs. Palmer wrote a fictitious letter to herself signing it "Anita Watkins" and then forwarding it to Denver Motor Finance.

The elements of the offense charged in this count are the scheme to defraud or for obtaining money or property by means of false pretenses and the use of the mails for the purpose of executing such scheme. The evidence tended to establish that appellants devised a scheme to defraud Denver Motor Finance by delivery of fictitious notes and chattel mortgages in order to procure the release of new cars from the floor plan mortgage.

Both of the spurious chattel mortgages were mailed at Pueblo, Colorado, and received by Denver Motor Finance at Denver. The James K. Morris mortgage was acknowledged by Palmer as a notary public, and the assignment was executed by Mrs. Palmer. The evidence of guilt of both appellants on Count One is overwhelming.

■ We find no merit in the contention that appellants were prejudiced by the amendment of the information during the trial to conform to the proof. It was alleged in the information as follows:

"* * * that a certain chattel mortgage executed by one James K. Morris, 205 Madison, Pueblo, Colorado, on or about the *1st day of October* 1951, was a valid and subsisting chattel mortgage upon a 4-door sedan, Motor No. 4A 95216, Serial No. 4A 95216; that James K. Morris had agreed to pay *$1730.00* to Ace Motors in eighteen consecutive monthly installments of *$131.41* each beginning September 15, 1951, which said mortgage, on or about the 22nd day of August, 1951, was assigned to Denver Motor Finance * * *."

But the Morris mortgage received in evidence was to some extent at variance with the foregoing. The date of the purported execution was August 22, 1951, rather than October 1, 1951. The amount to be paid was $2,041.40 in 18 monthly installments of $113.41, instead of $1,730 in 18 monthly installments of $131.41. It was the order of the trial court permitting amendment of the information to accurately describe the Morris mortgage of which complaint is made.

Rule 7(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:

"The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

The appellants argue that no offense was charged in the original information because it was impossible to assign on August 22, 1951, a mortgage which was not executed until October 1, 1951. They assert that the amendment resulted in an offense being stated where none had been stated before. But this argument is based upon a misconception of the offense charged in Count One. As heretofore observed, the two essential elements of the offense are the scheme to defraud and the use of the mails for the purpose of executing the fraudulent scheme. Webb v. United States, 10 Cir., 191 F.2d 512.

An accurate description of the fictitious mortgages which were alleged to have been used in the scheme to defraud was not an essential ingredient of the offense charged. The amendment allowed by the court related only to the identity of the mortgage and not to the substance of the offense. The information as originally filed charged an offense, and the allowance of the amendment to conform to the proof did not effect any change in the offense charged. The case of United States v. Personal Finance Company of New York, D.C.S.D.N.Y., 13 F.R.D. 306, relied upon by the appellants is not in point. There the amendments to the information sought to be made, which the court would not permit, would have resulted in the charging of a different offense.

In addition, it is apparent that the appellants suffered no prejudice. The description of the Morris mortgage in the original information was sufficiently accurate to disclose its identity to appellants. The name and address of the purported mortgagor were correctly given; the car covered by the mortgage was properly described, including the motor and serial numbers, and the date of the assignment of the mortgage by appellants was correctly given. The appellants could not have been surprised, nor was any claim of surprise made. Under these circumstances we are entirely satisfied that the substantial rights of the defendants were not prejudiced by the amendment.

In Counts 2 to 5 inclusive, it was charged that Palmer devised a scheme to defraud purchasers and prospective purchasers of preferred stock of Ace Finance, Inc., a Colorado corporation, and to obtain money by false pretenses by making many false representations in an effort to persuade persons to purchase such preferred stock. Separate uses of the mail by deposit of mail matter in the post office at Pueblo, Colorado, addressed to persons who were solicited by Palmer were made the basis of these four counts.

Palmer does not contend that the evidence is insufficient to support his conviction on these counts, but he seeks reversal because of alleged errors by the trial court in the admission and exclusion of evidence and in the instructions to the jury. A brief summary of the evidence will suffice.

Palmer caused the Ace Finance, Inc. to be incorporated under the laws of Colorado in June of 1951, ostensibly for the purpose of engaging in the finance business. He became its president and general manager. In December of 1951, he caused an ad to be run in the Wichita Beacon, Wichita, Kansas, under the column "Money Wanted", promising to pay six per cent interest on investments in Ace Finance. Inquiries followed from persons desiring to make investments, some of which were answered by mail. Palmer thereafter personally called on prospects.

Among the misrepresentations made from time to time by Palmer were statements that each account was insured up to $10,000; that the current dividend was six per cent; that each investment was guaranteed by an agency of the federal government; that the sum of $25,000 was carried in a reserve to make refunds to investors who wanted their money back; that Ace Finance was audited every three months by the Controller of Currency of the State of Colorado; and that a small rubber stamp exhibited by him was proof that his company was under a $75,000 bond. In addition, false representations were made from time to

time that various parties had invested in the preferred stock of Ace Finance. The only intended victim who actually succumbed was one Wells M. Coleman, of Russell, Kansas, who invested $6,000 in the preferred stock.

Palmer urges that the court erred in admitting Exhibit 7, a typewritten letter on the letterhead of Ace Finance bearing the typed signature "J. R. Palmer". This letter was mailed at Pueblo, Colorado, on January 14, 1952, addressed to Wells M. Coleman, Russell, Kansas, and received by the addressee. It was objected to on the ground that it was not shown that it was written by Palmer nor signed by him.

■ This letter was in reply to one written to Ace Finance asking for information. Coleman's inquiry was inspired by the ad inserted by Palmer in the Wichita Beacon. Palmer called on Coleman at his home to solicit an investment shortly after the letter was received. When Palmer was interrogated about the letter on cross-examination, he apologized for one false statement contained therein. This contention by Palmer is based on the erroneous premise that the government had the burden of showing that he either personally signed the letter or posted it for mailing. It was not necessary to show that the letter was written, signed or posted by Palmer. It is enough if he, in carrying out the scheme to defraud, caused the letter to be mailed, and this fact, like any other, may be found from circumstances. Butler v. United States, 10 Cir., 53 F.2d 800. The mailing of this letter was essential to the proof of guilt on Count Two. The circumstances in proof in the case warranted its admission by the court and a finding by the jury that Palmer caused the letter to be mailed.

■ Complaint is made by Palmer of the admission in evidence of Exhibit 8, a blotter mailed from the office of Ace Finance, in Pueblo, Colorado, to Coleman, and Exhibit 11, a letter purportedly written by C. B. Parker, as secretary of Ace Finance, to Coleman congratulating him upon his investment, upon the

ground that it was not established that these mailings were ascribable to Palmer. The short answer to this contention is that Palmer testified upon cross-examination that he had the girls in the office mail all letters and blotters which were received from Ace Finance by Mr. Coleman, Mr. Grewell, Mrs. Suhr and others.

■ It is next asserted that the court committed error in admitting into evidence Exhibits 2, 4 and 5, being certain records of the Wichita Beacon designed to prove the content of the Wichita Beacon ad and to show that Palmer caused the ad to be inserted and paid for it. These exhibits were produced and identified by Nathan Kobey, a Denver attorney and assistant secretary of the corporation which published the Wichita Beacon. Kobey testified that these records were made in the regular course of business. Objection to the admission of these exhibits was made upon grounds that they were not kept under the supervision and direction of the witness and that he had no personal knowledge of the making of the records. This argument is without merit. The records became admissible upon proof that they were made in the usual course of business. The lack of personal knowledge by the witness of the facts recorded and other circumstances may be shown to affect their weight. 28 U.S.C.A. § 1732. Furthermore this evidence could not have been prejudicial. It was cumulative. A post office inspector testified that Palmer made an admission to him that he had caused the ad in question to be placed in the Wichita Beacon and his testimony was not refuted by Palmer.

■ It is next argued that the court improperly excluded evidence pertaining to the amount of loss sustained by Ace Finance in a fire which occurred in November of 1952. An offer of proof was not made, and we do not know what loss would have been claimed had the testimony been admitted. The trial court properly ruled that this evidence was not material to any issue in the case. The misrepresentations alleged to have been made by Palmer with respect to the financial condition of the company pertained to its financial condition in the early months of 1952.

■ The propriety of admitting in evidence Exhibit 46 presents a more substantial question. This exhibit was a letter written on April 23, 1952, on stationery of Ace Finance to Mrs. Rainbolt. It was signed by William Davis, who had worked for Ace Finance for a period of about sixty days. It referred to some letters written by Mrs. Rainbolt in which she had said that she owned stock in Ace Finance, Inc. Davis says therein that he had checked the records and did not find that she had ever invested money in the company. Reference is then made to an indebtedness of Palmer and Mrs. Palmer to Mrs. Rainbolt in the sum of $15,000, which Palmer had apparently attempted to discharge by delivery of preferred stock of Ace Finance. Palmer is referred to as an employee and as the general manager of the company. Davis closes the letter by admonishing Mrs. Rainbolt not to write any more letters about the company. It is urged that this letter was not shown to have been written by direction of Palmer, was not material to any issue in the case and was highly prejudicial.

The government suggests that the letter was admissible to show that the preferred stock issued to Mrs. Rainbolt had not been paid for, and that the only preferred stock of the company issued and outstanding was that of Wells Coleman.

The amount of the preferred stock of Ace Finance, Inc. issued and outstanding was not a material issue in the case. In addition, there was no evidence tending to prove that the letter was written by Palmer or at his direction. The letter was inadmissible but a careful examination of the whole record convinces us that its erroneous admission was not prejudicial and does not warrant a reversal of the case. Rice v. United States, 10 Cir., 149 F.2d 601.

# 867

Complaint is made of certain instructions given to the jury. Counsel for appellants, in reply to an inquiry made by the trial court before the jury retired, stated that he had no objections to the instructions. Rule 30 of the Federal Rules of Criminal Procedure provides that "* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *" The obvious purpose of the rule is to afford the judge an opportunity to correct erroneous instructions before the jury retires to consider its verdict. United States v. Furlong, 7 Cir., 194 F.2d 1. While the court will notice plain errors affecting substantial rights although not brought to the attention of the court, the belated objections made to the instructions, even if well founded would not justify a reversal of the case. Moreover, a careful consideration of the instructions in their entirety convinces us that they adequately state the law and the incorrectness of one paragraph or one phrase, standing alone, would not constitute reversible error. McFarland v. United States, 85 U.S.App.D.C. 19, 174 F.2d 538.

Palmer finally contends that Counts 2, 3, 4 and 5 are invalid as imposing unauthorized multiple penalties. It is well settled that each separate use of the mails in the execution of a scheme to defraud constitutes a separate offense. Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706; Mitchell v. United States, 10 Cir., 142 F.2d 480. The same rule applies to the use of the mails in a scheme to defraud in the sale of securities. Palmer cites and relies on the recent case of Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. It was there held that the simultaneous transportation of more than one woman in violation of the Mann Act, 18 U.S.C.A. § 2421, constituted only one offense and not a separate offense for each woman transported. The court's construction of the Mann Act in the Bell case obviously may not be regarded as a departure from the rule laid down in the Badders case in which the court dealt with the mail fraud statute.

The judgments are affirmed.