**Helen THOMAS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 5427.**

United States Court of Appeals
Tenth Circuit.

Dec. 6, 1956.

Rehearing Denied Dec. 28, 1956.

Murrah, J., dissented.

Raymond D. Buckles, Denver, Colo., for appellant.

Robert S. Wham, Asst. U. S. Atty., Denver, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., was with him on the brief), for appellee.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

An information was filed against Helen Thomas and Thelma Lorraine Williams, charging that on August 6, 1955, in the District of Colorado they "did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of a narcotic drug, to-wit, 470 gelatin capsules containing heroin, after said heroin had been imported and brought into the United States, knowing the same to have been brought in contrary to law, in violation of 21 U.S.C. § 174."

Thomas entered a plea of not guilty and was tried, convicted and sentenced. She has appealed.

On August 6, 1955, A. C. Ellis, Jr. examined an air mail special delivery parcel, which had originated at Los Angeles, California, bore a return address of M. T. Thompson, and was addressed to Mrs. Alice Taylor at 3036 Williams Street, Denver, Colorado. The package was not sealed. It was wrapped with string. After examining the contents, Ellis replaced the contents and retied the package with the string. The package contained 470 capsules and the total net weight of the contents of the capsules was 846 grains. At the trial it was stipulated that the capsules contained a certain quantity of heroin. Ellis communicated with John W. Marsh, a Narcotics Agent for the United States Treasury Department, Bureau of Narcotics. Marsh then went to the post office, accompanied by two other Narcotics Agents. Marsh took four of the capsules from the package and caused a portion of their contents to be analyzed. He then returned the four capsules to the post office, placed them in the package and retied the package with the string.

Russell Covey, a special delivery messenger, was designated to deliver the package. Ellis, Marsh, and Narcotic Agents Ford and Gress, and a City Detective, Talty, then went to the vicinity of 3036 Williams Street. Marsh and Gress stationed themselves in a position where they could observe the front door of an apartment at 3036 Williams Street.

Agent Ford and Detective Talty went to the rear of the apartment. Ellis remained under cover of the automobile in which the officers went to 3036 Williams Street. Shortly thereafter, Covey arrived with the package. Covey testified that on August 6, 1955, at about 9:30 a. m., he took the package to 3036 Williams Street and knocked at the door; that a lady, thereafter identified as Thomas, came to the door; that he informed her he had a special delivery package for Mrs. Alice Taylor; that Thomas "semi-turned away from me and said back into the apartment, 'Alice, put on some clothes. You have a special delivery package.'"; that Thomas then opened the screen door a little bit and he assumed she was going to take the package; that he then made an effort to hand her the package, but that she did not take it; that she looked up the court both ways and then shut the screen door; that another lady, thereafter identified as Williams, came into the front room of the apartment; that Thomas told him he could not look, because Williams was not dressed; that Thomas then opened the screen door for a second time and he again assumed she was going to take the package and offered it to her. She did not take it. She looked up the court both ways, again shut the screen door; that Williams asked if she had to sign for the package. He informed her it was not insured or registered and no signature was necessary. Thomas then pushed the screen door open and Williams came up and accepted the package.

At that juncture, in keeping with a prior arrangement, Ellis signaled Agents Marsh and Gress. Marsh and Gress then went to the front door of the apartment. Marsh rattled the screen door, and stated, "Federal Officer, Open up." Williams then ran toward the rear of the apartment. Marsh then broke through the screen door and went into the kitchen and out the back door. At that time, Agent Ford and Detective Talty came around the building. Williams stopped

and Ford and Talty arrested her and brought her back into the apartment.

Agent Gress placed Thomas under arrest.

Ellis testified that Thomas was fully clothed, but that Williams was clothed only from the waist down.

When Marsh entered the apartment the package was lying on a coffee table and Thomas was sitting on a divan immediately in front of the coffee table.

Both Williams and Thomas refused to open the package and denied that either of them was Alice Taylor. The officers opened the package and inspected the capsules. Williams and Thomas said they did not know anything about it.

On cross-examination, Covey was asked "Are you certain that the first woman didn't say 'Thelma,' instead of 'Alice, you have a package'?" Covey answered, "No, sir."

At the trial, Thomas testified that she had resided at the 3036 Williams Street address for about a year and one-half. Williams testified that she had resided at that address for about three months.

Thomas further testified that she did not know any person by the name of Alice Taylor. She denied making the statement testified to by Covey, "Alice, put on some clothes. You have a special delivery package." She did not testify that she said, "Thelma, * * * You have a special delivery package." She denied that she had any knowledge with respect to the package.

She further testified that on the morning of August 6, 1955, she had arranged to go downtown with some friends to have some shoes fixed and that she looked out the screen door at the time the postman was there to see if her friends were still in the area where they had parked behind the house, and that she did not remember looking in the other direction.

▬ Thomas interposed a motion for a directed verdict of not guilty at the close of the Government's case and also at the close of all the evidence.

Evidence which creates a mere suspicion of guilt is not sufficient to sustain a verdict of guilt.[1]

The only incriminating circumstances against Thomas were her statement to Williams: "Alice," (which was not the given name of Williams) * * "You have a special delivery package," and the fact that she twice looked up and down the street while Covey was undertaking to deliver the package. There was no evidence that Thomas at any time had physical possession of the package. Therefore, in order to make the provisions of 21 U.S.C.A. § 174[2] applicable to Thomas, it was necessary to prove that she was acting in concert with Williams. The evidence indicated and warranted the inference that the package was intended for Williams, who manually accepted and received it and placed it on the coffee table. We think the evidence against Thomas merely created a suspicion of guilt and that it was insufficient to sustain a verdict of guilty.

Thomas filed a motion for a judgment of acquittal, notwithstanding the verdict, and, in the alternative, for a new trial. From facts adduced at a hearing on a motion to suppress evidence, interposed by Thomas, evidence was introduced which leads us to believe that on a new trial, the Government may be able to adduce additional evidence, which, taken with the evidence introduced at the trial below, would warrant a verdict of guilty as against Thomas. Accordingly, the judgment is reversed and the cause remanded for a new trial.[3]

MURRAH, Circuit Judge (dissenting).

In my view, the evidence recited in the majority opinion is entirely sufficient to show concerted action between the appellant and her co-defendant. It was entirely sufficient to support a verdict, and I would affirm the case.

1. Vick v. United States, 5 Cir., 216 F.2d 228, 233; Garrison v. United States, 5 Cir., 163 F.2d 874; Eng Jung v. United States, 3 Cir., 46 F.2d 66, 67; Philyaw v. United States, 8 Cir., 29 F.2d 225, 227; Colbaugh v. United States, 8 Cir., 15 F.2d 929, 931.

2. "Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3. See Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; cf. Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426.