**Ben CORBIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 5736.**

United States Court of Appeals
Tenth Circuit.

Feb. 17, 1958.

Lewis, Circuit Judge, dissented.

Carroll Samara, Oklahoma City, Okl. (Herbert K. Hyde, Oklahoma City, Okl. of counsel, on the brief), for appellants.

Philip R. Douglas, Asst. U. S. Atty., Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, LEWIS, and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellant Corbin was charged in a two count indictment with the possession, removal and concealment of whiskey on which the required federal tax had not been paid.[1] A jury found him guilty on each count. The trial court imposed concurrent sentences. Appellant asserts that the evidence was insufficient and that the instructions were erroneous.

■■ At the conclusion of the government's case, Corbin demurred to the evidence and moved for a directed verdict. After adverse rulings by the court thereon, he presented evidence in defense of the charges. By this action he waived any objections he may have had to such rulings.[2] At the conclusion of the presentation of evidence, Corbin made no motion for a judgment of acquittal or any other motion attacking the sufficiency of the evidence. The general rule is that a federal appellate court will not pass upon the sufficiency of the evidence to support a verdict in the absence of a motion for a judgment of acquittal interposed at the close of all the testimony.[3]

■ Corbin presented no requests for instructions and, before the jury retired, made no objections to the instructions given by the court. The correctness of the instructions will not be reviewed on appeal unless appropriate objections were made before the jury retired to consider its verdict.[4]

---

1. The first count charged a violation of 26 U.S.C. § 5008. The second count charged a violation of 26 U.S.C. § 7206.

2. Johns v. United States, 10 Cir., 227 F. 2d 374, 375.

3. Crabb v. United States, 10 Cir., 99 F.2d 325, 326; Lewis v. United States, 10 Cir., 92 F.2d 952, 953; Jaramillo v. United States, 10 Cir., 76 F.2d 700, 701; Kelly v. United States, 10 Cir., 76 F.2d 847; Williams v. United States, 10 Cir., 66 F. 2d 868, 869; Armstrong v. United States, 10 Cir., 65 F.2d 853, 856; Keady v. United States, 10 Cir., 62 F.2d 689, 690; Picciurro v. United States, 8 Cir., 250 F.2d 585.

4. Hayes v. United States, 10 Cir., 238 F.2d 318, 321; Palmer v. United States,

■ The procedural deficiencies which have been noted will be disregarded "where there is manifest error and it is necessary to prevent a miscarriage of justice." [5] This is an exceptional power to be sparingly used.[6] However, mindful of our duty to guard against manifest injustice, we have examined with care the record in this case.

Witness Gaunt, a federal investigator for the Alcohol and Tobacco Tax Division, in company with his fellow investigators Breck and Smith, saw the defendant on the day in question, June 29, 1956, driving a green Chevrolet automobile. Corbin was known to Gaunt who had seen him on several occasions. Gaunt and his federal officers followed Corbin who eventually drove to the residence of Rosie Younger and backed his car up to a shed.

Investigator Smith, who did not previously know Corbin, a colored man, left his fellow officers and went to a spot where he could observe the green Chevrolet. Smith saw a colored man go into the house, come out with a box, and put it in the trunk of the car. He closed the trunk, was joined by another colored man, and drove off.

Smith communicated with the other investigators through a portable radio. They placed their car so as to block the road down which the green Chevrolet was traveling. The driver of the Chevrolet did not slow down when he approached the government car but speeded up, hit the government car in the back fender, skidded into the ditch, then proceeded down the road. The officers pursued the Chevrolet at speeds up to ninety miles an hour but did not catch it.

They then returned to the Younger residence in which they found fourteen and one-half cases of half-gallon jars and one gallon glass jug, all containing moonshine whiskey. In a shed near the house there were twenty-nine empty cases of half-gallon jars which, when opened, were found to smell of whiskey. Some contained dregs of whiskey. Investigator Gaunt examined the jars containing whiskey for fingerprints. On two of the jars he found fingerprints which he identified as those of appellant Corbin. None of the jars had affixed a government stamp denoting payment of the federal tax. Samples of the contents of the jars were analyzed and identified as moonshine whiskey.

The defendant took the stand in his own behalf. He admitted two previous federal felony convictions on liquor charges. He denied any and all connection with the green Chevrolet. While he admitted that Rosie Younger was his cousin, he denied ever having been to her house on the day in question and stated that on that date he was engaged in his usual employment of doing odd jobs in Guthrie, Oklahoma. He emphatically denied any connection with the whiskey and any participation in the activities described by the testimony of the investigators. Rosie Younger testified that the whiskey was hers.

In rebuttal, government witnesses testified that the Clark Motor Company of Oklahoma City, on April 18, 1956, had sold a green Chevrolet bearing the same license tag as that appearing on the Chevrolet observed by the officers on June 29, 1956, to a colored man named Ben Corbin who had requested that the title be put in the name of Robert Taylor, Guthrie, Oklahoma.

We have examined the instructions. They were fair, adequate, and free from error.

■ The verdict of a jury must be sustained if, taking the view most favorable to the government, there is substantial evidence to support it.[7] In some

10 Cir., 229 F.2d 861, 867; Braswell v. United States, 10 Cir., 224 F.2d 706, 711; Marteney v. United States, 10 Cir., 218 F.2d 258, 264; Thayer v. United States, 10 Cir., 168 F.2d 247, 249.

5. Johns v. United States, supra.

6. Armstrong v. United States, 10 Cir., 65 F.2d 853, 856.

7. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Wilcoxon v. United States, 10 Cir., 231 F.2d 384, 385, certiorari denied 351 U.S. 943, 76

circuits, including the Tenth, this rule has been modified in circumstantial evidence cases to require that the appellate court find that the facts and circumstances are inconsistent with any reasonable hypothesis of innocence.[8] Such modification appears to run contrary to the decision in Holland v. United States, 348 U.S. 121, 131, 75 S.Ct. 127, 99 L.Ed. 150, wherein the court criticized an instruction in a circumstantial evidence case that the government's evidence must exclude every hypothesis other than guilt, and said (348 U.S. 140, 75 S.Ct. at page 137):

> "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Under the Holland decision the correct instruction to the jury is the reasonable doubt instruction, not the circumstantial evidence instruction. It follows that on appeal the sufficiency of the evidence must be tested by the substantial evidence rule rather than the circumstantial evidence rule.

The jury passes upon the credibility of the witnesses and determines the fact of reasonable doubt. We are confined to the question of law as to whether there is substantial evidence, either direct or circumstantial, which, together with the reasonable inferences to be drawn therefrom, sustains the verdict. In doing this we must look at the evidence from the standpoint most favorable to the government.

Substantial evidence is more than a scintilla. It must do more than create a suspicion of the existence of the fact to be established.[9] We must consider the case as a whole and not piecemeal.[10] The lines of proof must be considered together, not separately. Even if each line of proof taken by itself is of insufficient probative force, the conclusion does not necessarily follow that the proof taken as a whole is insufficient. The lines of proof interweave and support each other.[11]

These controlling principles must be applied to the case before us. The inference to be drawn from the existence of the fingerprints was a matter for consideration by the jury.[12] It has long been held that flight is a legiti-

S.Ct. 834, 100 L.Ed. 1469; Lunsford v. United States, 10 Cir., 200 F.2d 237, 238–239; Kelling v. United States, 10 Cir., 193 F.2d 299, 301–302; Carlson v. United States, 10 Cir., 187 F.2d 366, 370, certiorari denied 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367; Madsen v. United States, 10 Cir., 165 F.2d 507, 511; United States v. Manton, 2 Cir., 107 F.2d 834, 839, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232–237, certiorari denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850; Stoppelli v. United States, 9 Cir., 183 F.2d 391, 393, certiorari denied 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631.

8. Sapir v. United States, 10 Cir., 216 F.2d 722, 724, affirmed 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426; Morgan v. United

States, 10 Cir., 159 F.2d 85, 87; Leslie v. United States, 10 Cir., 43 F.2d 288, 289. In 55 Col.L.Rev. 549, 550–551 there is a discussion of whether the appellate courts should consider the sufficiency of the evidence under the substantial evidence rule or the circumstantial evidence rule and a compilation of the decisions pro and con.

9. Cf. Thomas v. United States, 10 Cir., 239 F.2d 7, 10.

10. United States v. New York Great Atlantic & Pacific Tea Company, 7 Cir., 173 F.2d 79, 81.

11. 55 Col.L.Rev., supra.

12. Stoppelli v. United States, 9 Cir., 183 F.2d 391, 393, certiorari denied 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631.

mate ground for the inference of guilt.[13] As stated in United States v. Heitner, 2 Cir., 149 F.2d 105, 107, certiorari denied sub. nom. Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432:

" * * * it has at no time been doubted that flight is a circumstance from which a court or officer may infer what everyone in daily life inevitably would infer."

While it has been said that evidence of flight is of slight probative value unless there are facts pointing to the motive which prompted it, the evidence relating to the situation at the Younger residence furnishes such facts.[14]

■ The presence of Corbin's fingerprints on the whiskey jars, his activities at the Younger residence, and his flight constitute as substantial evidence as that held sufficient to support the verdict in Ingram v. United States, 5 Cir., 241 F.2d 708, and Icenhour v. United States, 5 Cir., 187 F.2d 663. The actions of the defendant are not subject to a reasonable explanation as was the case in Vick v. United States, 5 Cir., 216 F.2d 228.

Corbin presented himself as a witness in his own defense. He left the existence of the fingerprints unexplained. He denied presence at the Younger residence and flight to evade the officers. He denied all knowledge of or connection with the green Chevrolet. The credibility of the witnesses was a question for the jury which chose to believe the witnesses for the government and to disbelieve the witnesses for the defense. In the circumstances of this case if the appellate court was to say that the evidence was insufficient it would in effect be saying that it believes the testimony of Corbin and disbelieves that of the government witnesses. This would be a clear invasion of the province of the jury.

There is substantial evidence to sustain the verdict. The record contains no plain error. The conviction of Corbin by the jury was not a miscarriage of justice.

The judgment is affirmed.

LEWIS, Circuit Judge (dissenting).

Although I am not in accord with several of the supporting statements used by the majority in affirming this appellant's conviction, it will suffice to ground my dissent upon the firm belief that the evidence is totally insufficient to warrant submission to a jury. And while an appellate court should, in view of procedural defects here present, review the sufficiency of the evidence only to prevent manifest injustice, the court should also be slow to give comfort to, and review most carefully the entire basis of, a prosecution apparently based upon that most basic of injustices, an unlawful search and seizure.

The evidence must of course, in view of the jury's verdict, be now considered in the aspect most favorable to the government. This means that no credence can be given to defendant's testimony.[1] I give it none for the purpose of this review but it is interesting to note that if appellant is a perjurer then the truth would have served him better. Upon

---

13. Allen v. United States, 164 U.S. 492, 498–499, 17 S.Ct. 154, 41 L.Ed. 528; Bird v. United States, 187 U.S. 118, 131, 23 S.Ct. 42, 47 L.Ed. 100; United States v. Waldman, 2 Cir., 240 F.2d 449, 451–452; Kimes v. United States, 5 Cir., 242 F.2d 99, 100, certiorari denied 354 U.S. 912, 77 S.Ct. 1299, 1 L.Ed.2d 1429; cf. Ruhl v. United States, 10 Cir., 148 F.2d 173, 176.

14. Cf. Vick v. United States, 5 Cir., 216 F.2d 228, 232. The subject of flight is comprehensively discussed in Hickory v. United States, 160 U.S. 408, 417 et seq., 16 S.Ct. 327, 40 L.Ed. 474. In the case under consideration the court instructed the jury that the running of the road block was a circumstance which the jury should consider along with other circumstances.

1. Defendant was the only witness testifying on his behalf. The witness Rosie Younger, at whose home the liquor was found and who testified unequivocally that the liquor was hers alone, was called and so testified upon direct examination as a witness for the government. The main opinion may inadvertently have given an erroneous impression as to this fact.

claim of the possessory right to the liquor in question its suppression as evidence was within his right as the search and seizure were without benefit of arrest or warrant. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

The government's case rests upon two evidentiary circumstances which to affirm this judgment must be held to constitute substantial evidence of guilt. First, the accused was upon the premises where the contraband liquor was subsequently discovered, put something in his car, drove away in normal fashion but subsequently ran a road block put up by federal officers at a point some considerable distance down the road. To me, the natural inference from such conduct is that appellant wished to avoid apprehension because of some misgivings as to his car, its contents, or his companion, and not because he was fleeing from the scene of a crime at the farm house.[2] But if other permissible inferences are possible, none probes the substance of the offense itself. "There are so many reasons for such conduct, consistent with innocence, that it scarcely comes up to the standard of evidence tending to establish guilt; but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves, depending upon surrounding circumstances." Quoted with approval in Hickory v. United States, 160 U.S. 408, 16 S.Ct. 327, 331, 40 L.Ed. 474.

But I do not interpret the main opinion to place more emphasis, nor do I wish to place less emphasis, upon appellant's alleged flight than to acknowledge it as a circumstance proper for consideration along with the government's other evidentiary circumstance—the existence of appellant's fingerprints upon two of the liquor containers found at the farm house.

Upon discovery at the home of Rosie Younger of fourteen and one-half cases of half-gallon jars and one gallon jug of moonshine whiskey together with twenty-nine cases of empties, the investigating officers immediately and summarily destroyed the contraband, saving only those bottles carrying fingerprints. Seventeen fingerprints were found on the jars. The prints were photographed, classified and compared with appellant's prints. Two of the prints were appellant's. Fifteen were not. The expert testifying could not state whether the prints were old or new or had been left upon the jars before or after liquor was in the containers. The fingerprinting procedures were completed the day after seizure and thereafter all the jars were lost or destroyed by the officers, including those upon which appellant's prints were said to appear. No effort was made to identify the fifteen prints admittedly not appellant's.

To my mind, the appearance of appellant's prints, interspersed with fifteen prints not his, upon two of the jars containing whiskey, and upon which this prosecution must rest, carries no probative value sufficient to constitute substantial evidence of unlawful possession, removal and concealment of whiskey. The everyday activities of every person leave fingerprints upon a multitude of articles which may subsequently be changed from innocent to prohibited use. The possibilities and even probabilities of injustice are apparent.

Reviewing this record from a moral standpoint I would term this prosecution as shabby, fraught as it is with what I consider unlawful, unfair and suspicious activities upon the part of federal officers. Reviewing this record from a strictly legal standpoint I consider the evidence insufficient to sustain a conviction. Entertaining these views I must be content with the solitude of dissent.

2. Apparently the government originally shared this view. Although appellant was well known to the officers and lived with his wife and children at a perma-

nent residence in Oklahoma City, he was neither interrogated, apprehended nor arrested until five weeks after this incident.