**Tony Charles OSBORN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 9702.**

United States Court of Appeals
Tenth Circuit.

March 5, 1968.

John H. Williamson, Denver, Colo., for appellant.

Scott McCarty, Asst. U. S. Atty., Albuquerque, N. M. (John Quinn, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before LEWIS and HILL, Circuit Judges, and CHRISTENSEN, District Judge.

HILL, Circuit Judge.

The appeal is from a jury conviction for violation of 18 U.S.C. § 2113(b).[1]

1. 18 U.S.C. § 2113(b) states:
   "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; * * *."

Appellant attacks the sufficiency of the government's evidence and claims error by the trial judge in his instructions to the jury.

A fair summary of the government's evidence is as follows:

Appellant, a resident of California, hitchhiked a ride from Tucson, Arizona, to Las Cruces, New Mexico, with one Ed Britt, and arrived there on June 16, 1966. That evening they visited Wilda St. Clare, an acquaintance of appellant, who was an employee of the Farmers and Merchants Bank in Las Cruces. On the evening of June 17, Mrs. St. Clare was working after hours in the bank and Osborn and Britt went to the bank at about 7:00 p. m. They took a sandwich to Mrs. St. Clare and remained inside the bank until she finished her work. While in the bank both men entered the room where Mrs. St. Clare was working as an IBM proof operator.

The evidence further disclosed that a Mr. Earl Ziehl, during the day of June 17, had deposited a Treasury check in the amount of $236.09 in this bank. This check and two others disappeared from the bank after they had been deposited but before they had been proofed on the IBM machines. An employee of the Coronado State Bank in El Paso, Texas, testified that on June 20 a man appeared at his window in the bank and presented the Ziehl check, that he stamped the check but then refused to cash it when the man didn't produce identification. This bank employee could not positively identify appellant as the man who presented the check but he had selected appellant's photograph from among several presented as the person attempting to cash the check. Another witness, a drive-in window teller at the First National Bank of Dona Ana County, testified that on June 21 she cashed the check without first noticing the El Paso bank stamp on it. After noticing the stamp on the check she requested the man to come back into the bank and return the money she had

given to him. He did not come back and drove away in a white 1961 Ford car bearing license number 7–4636, the license number on Mrs. St. Clare's car, which was also a 1961 white Ford. She identified appellant as the man who cashed the check. Another teller at the same bank testified he saw the man drive away from the bank, identified this man as appellant and likewise described the car and license number.

Appellant took the witness stand and denied any knowledge of the check or attempting to cash a check at the places where he was identified. He and Wilda St. Clare testified that on the 20th they were at Wilda St. Clare's house until noon, at which time they drove to Silver City and then returned to her house. Their testimony as to June 21st, 1966, was that appellant did not leave the house until the afternoon of the 21st, at which time he went with Wilda St. Clare's two children to the local swimming pool. Dave St. Clare, Wilda's 16 year old son, also testified that the appellant went swimming with him and his sister on the afternoon of the 21st. It was established that Wilda St. Clare talked to a Mr. Greathouse of the FBI on the evening of June 21st, 1966, at which time she learned of the disappearance of the check. Mr. Greathouse testified as to the conversations with Wilda and Dave St. Clare to the effect that they had given prior statements to him which were inconsistent with their testimony in court. On this evidence the jury returned a verdict of guilty against appellant from which he now appeals.

■■ Appellant first argues that the government did not provide evidence of possession by the appellant of the check in question sufficient to support an inference of guilt as required by this court in Jenkins v. United States, 10 Cir., 361 F.2d 615. This contention of appellant has very little merit. Viewing the evidence presented by the government in its · best light as we must,[2] it established that

2. Collins v. United States, 10 Cir., 383 F. 2d 296; Adams v. United States, 10 Cir., 375 F.2d 635; Corbin v. United States, 10 Cir., 253 F.2d 646.

appellant had possession of the check and attempted to cash it on two occasions and in fact did cash it. Exclusive possession as required by this court in Jenkins v. United States, supra, to support the inferences of participation in the theft of recently stolen property was clearly present by the possession, control and cashing of the stolen check. Appellant makes no counter argument to this position but rests his argument on Allison v. United States, 10 Cir., 348 F. 2d 152, and Barfield v. United States, 5 Cir., 229 F.2d 936, both of which involve possession of a vehicle allegedly stolen and transported in interstate commerce. The facts of these cases raised the question of innocent unknowing presence being mistaken for exclusive possession. This is totally different from the facts presented in the instant case which raise the sole question of whether it was appellant who attempted to cash the check. As such they present no authority for appellant's argument that the government did not introduce sufficient evidence to show that appellant had exclusive possession of the stolen check.

■ Appellant's remaining arguments urge error in the instructions given by the trial court. No objections to the instructions were made after they were given and before the jury retired as required by Rule 30 of the Federal Rules of Criminal Procedure. Therefore, this court will not consider any error in the instructions given unless the errors were prejudicial and plainly erroneous.[3]

■ In this respect appellant argues that his conviction was based solely upon circumstantial evidence and that the jury was incorrectly instructed as to the use of circumstantial evidence and that had the correct instructions been given the circumstantial evidence presented by the prosecution was not sufficient to support a conviction. This argument is without merit. The instructions given by the trial court[4] have been expressly approved by this court in Lewis v. United States, 10 Cir., 365 F.2d 672. See also Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. The instructions given by the trial court were thus correct and appellant's argument that the circumstances shown in evidence must be consistent with guilt and inconsistent with every reasonable hypothesis of innocence does not correctly state the law in the Tenth Circuit.

■ The next error charged by appellant is that the trial court failed to give an instruction defining "possession" citing Barfield v. United States, supra. Again we do not find that the Barfield case is relevant in the instant situation. Here appellant's defense was a complete denial of any possession of the check in question, not that his was an innocent possession which had been misconstrued.

3. See Edwards v. United States, 10 Cir., 374 F.2d 24; Felton v. United States, 10 Cir., 344 F.2d 111; and Corbin v. United States, 10 Cir., 253 F.2d 646.

4. The following pertinent instructions were given by the trial court:
"The defendant in a criminal case is presumed by law to be innocent. That presumption remains with him throughout the trial, unless and until he is proven guilty of the crime charged by credible evidence beyond a reasonable doubt.
"The burden of proving a defendant guilty beyond a reasonable doubt rests upon the government, and that burden never shifts throughout the trial. If the government proves—fails to prove a defendant guilty beyond a reasonable doubt, you must acquit him.

"Now, a reasonable doubt means a doubt based on reason, and must be substantial, rather than speculative. A reasonable doubt is such a doubt as would cause a reasonable and prudent person, in the graver and more important affairs of life, to pause and hesitate to act upon the truth of the matters charged. * * *.

"Circumstantial evidence is proof of a chain of facts and circumstances indicating a guilt or innocence of the defendant. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It requires only that you, after weighing all of the evidence, must be convinced of the guilt of the defendant beyond a reasonable doubt, before he can be convicted."

As discussed above, if the government's witnesses were believed, as was apparently the case, it is clear that the appellant had exclusive possession sufficient to support the inference instructed by the trial court. This was a simple case of possession and there was no necessity of a definition of possession which undoubtedly is the reason that no request for such a definition was made. There is clearly no plain error in the trial court's failure to give an instruction defining possession.

■ Appellant then argues that the trial court erred in failing to instruct the jury that the testimony given by the FBI Agent Greathouse was impeaching testimony and was not to be taken as supporting substantive claims of the prosecution. The trial court did not give any express instructions to the jurors of the weight to be given to Mr. Greathouse's testimony although he did state that "I think it can be admitted solely as to impeachment", in answer to an objection by appellant's defense attorney. While it would have been better practice to give an instruction at this point informing the jury that the line of testimony was to be considered solely as to the credibility of the witnesses whose testimony was being impeached, still an examination of the testimony in question reveals that nothing of substance was given during this testimony which could have prejudiced appellant.

In light of the failure to request an instruction pertaining to this matter we do not feel that the impact of the admitted instruction turned the minds of the jury, in the total setting, sufficient to constitute prejudice. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Brooks v. United States, 10 Cir., 309 F.2d 580.[5]

■ Appellant's last contention is that the trial court erred in renewing an instruction on flight. This argument is also meritless as the trial court's instructions in this matter [6] followed this court's decision in Corbin v. United States, 10 Cir., 253 F.2d 646; Kreuter v. United States, 10 Cir., 376 F.2d 654; and Burroughs v. United States, 10 Cir., 365 F.2d 431. The fact that Agent Greathouse had a conversation with Wilda St. Clare on the night of the 21st at which time she was informed of the commission of the crime and the fact that suspicion was being directed toward appellant and the fact that appellant left Las Cruces, New Mexico, to return to California in the early morning hours of the 22nd is sufficient evidence to establish appellant's awarenesss of a motive to flee. There is clearly no plain error in the trial court's instructions as to flight and, therefore, appellant's argument in this respect is without merit.

Affirmed.

---

5. Most of the statements elicited by Agent Greathouse on direct examination regarded conflicts of the statements made by Wilda St. Clare and Dave St. Clare in the statements which were made to him at various times. And much of the testimony given by Greathouse had been previously elicited by the other witnesses. The sole effect it would have on the jury would be to cast a doubt upon the credibility of the witnesses, not to produce any direct evidence going to the guilt of appellant.

6. The trial court's instructions as to the inference to be drawn from the flight were: "Now, the intentional flight of the defendant, Ladies and Gentlemen, immediately after the commission of a crime, is not, of course, sufficient in itself to establish guilt, but is a fact which, if proved, may be considered by you in the light of all the other evidence in the case, in determining guilt or innocence. Whether or not the evidence proves intentional flight, or, if proved, whether such evidence of flight shows a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within your province."